UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FILED

In re:

ROBERT CHARLES WALLERIUS

Debtor.

_____/

2010 OCT 15 P 4: 0

CLERK
BANKRUPTCY COURT
NORTHERN DISTRICT FL.

CASE NO. 10-40401-LMK

Chapter 11

### DEBTOR'S PLAN OF REORGANIZATION
### (October 15, 2010)

ROBERT C. WALLERIUS, Debtor, submits the following Plan of Reorganization.

### ARTICLE I

### Provision for Unclassified Claims

A. Administrative Claims. Each holder of an administrative expense claim allowed under section 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and Debtor. As of this date, there are no administrative expenses or claims.

B. United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a) (6) will accrue and be required to be paid until the case is closed, dismissed, or converted. $325.00 in fees owed to the U. S. Trustee before the effective date of this Plan will be paid on the effective date.

C. Priority Tax Claims. The State of Florida Department of Revenue filed a Priority Tax Claim, (Claim #4) in the amount of $7,988.64 and has agreed to be paid $3,994.32 over 36 months upon approval of this plan by the instant court.

### ARTICLE II

### Treatment of Claims

The Plan separates Debtor's creditors into 6 different categories or "Classes." All of the Classes are impaired as the term is defined by Bankruptcy Code §1124.

Class 1 Creditor Holding Unsecured Priority Claim of $325.00 due the Office of the US Trustee for an unpaid quarterly fee for the April 1, 2010 dismissed prior Chapter 11 filing of case number 10-40233-LMK pm March 15, 2010. Case was dismissed for Debtor's failure to appear due to his Pro Se status not enabling him attend a hearing due to his recovery from major corrective surgery of shoulder and spine performed February 5, 2010.

Class 2 (schedules of petition to be amended to reflect the same) The State of Florida Department of Revenue originally filed a Priority Tax Claim, (Claim #4) in the amount of $7,988.64

and has agreed to be paid $3,994.32 over 36 months upon approval of this plan by the instant court.

Class 3 (schedules of petition to be amended to reflect the same) is the claim of Wealthbridge Mortgage (Claim #2), in the amount of $426,177.19 secured by a mortgage lien on the residence owned by Debtor and his estranged wife, who occupies it along with family (other than Debtor), at 341 Hickory Street, Washington, New Jersey, valued at more than $580,000.   Wealthbridge Mortgage subsequent to being granted relief by the instant court paid the real estate taxes and sold subject property at auction on August 27, 2010 thereby cancelling the asset, mortgage and real estate taxes paid in full by Wealthbridge Mortgage.

Class 4 (schedules of petition to be amended to reflect the same) is the claim of Wealthbridge Mortgage (Claim #3), in the amount of $ $317,270.11   secured by a mortgage lien on the residence owned by Debtor and his 82 year old mother, who occupies it alone at 57 Avenue C, Haledon, New Jersey, valued at more than $400,000.   Subsequent to being awarded relief from the automatic stay of the instant court, Wealthbridge Mortgage foreclosed, pay real estate taxes and scheduled the property for auction on September 14, 2010 and sale was stayed by US Bankruptcy – District of New Jersey when Debtor's mother and co-owner/co-borrower filed for Chapter 13 on September 14, 2010 hours prior to the auction.   Subsequent to the filing of the Chapter 13 bankruptcy by Debtor's mother, co-owner/co-borrower of the subject property, she applied through the NJ Judiciary Foreclosure mediation program and automatically qualifies for the process to modify the mortgage subject to the NJ Judiciary and then further approval of US Bankruptcy Court – District of New Jersey.   Because the mortgage holder GMAC serviced by Wealthbridge Mortgage is a co-Defendant in a Class Action suit in Kentucky on September 20, 2010 along with MERS who electronically recorded the GMAC mortgage, the NJ Sheriff's have been notified by NJ Judiciary to stay all foreclosures and evictions through October 31, 2010 and presumed longer.   22 other states joined in the Class Action staying foreclosures of the many Defendants.   No monthly payments are required until further notice of the courts in NJ until they determine who the true owner of the mortgage and note are and possibly voiding the foreclosure proceedings.

Class 5 consists of the <u>Allowed Unsecured Claims</u> (schedules of petition to be amended to reflect the same) of M'Ware Corporation (Claim #6) $280,633.98 to be paid directly to creditor M'Ware Corporation against amounts due Debtor's real estate trust from a mortgage receivable under NJ Superior Court Order whereby Debtor's NJ real estate Trustee, Michael R. Moran will make payments to creditor from forthcoming proceeds as provided in the Trust agreement.   Other Class 6 <u>Allowed Unsecure Claim</u> (schedules of petition to be amended to reflect the same) of Calvary Portfolio Services, Inc. (Claim #1-filed in the original petition as a disputed Unsecured Claim) was successfully negotiated to a reduce amount of $1200.00 and agreed to be paid over 36 months through an approved Plan of reorganization.   The final <u>Allowed Unsecured Claims</u> is of PSE&G undisputed at $711.05 and yet to be negotiated pro-rata over 36 months.

Class 6 consists of the <u>Disputed Unsecured Claims</u>.   Disputed Unsecured Claim of James Norton (improperly listed by the clerk of the instant court on the Docket Report as "M'Ware Corporation") (Claim #7) in the amount of $370,349.59, remains disputed because the same claim is pending a decision in NJ Superior Court, Ocean County to be collected from Debtor's 55% interest in NJ real estate trust by Creditor M'Ware Corporation.   The Creditor M'Ware Corporation already is protected to receive payment from funds to be collected by Trustee Michael Moran for distribution to trust creditors as provided in the Trust Agreement and related "Agreement Concerning Real Property. The total amount due the Debtor's NJ real estate trust per recent communication between the Debtor (55% owner) and Trustee Michael Moran (45% owner) pursuant to the buyer's agreement with the

Trust is $1,997,796.09 as of October 15, 2010. Trustee Moran expects to be paid the entire balance of mortgage receivable as soon as Debtor furnishes true copies of releases to Trustee Moran for personal judgments paid by Debtor in the past. The documents are in locked in storage in NJ and debtor is unable to travel until fully recovered from recent spinal surgery to correct a broken neck. Debtor expects to travel to NJ during November and obtain the releases requested by Trustee Moran.

The other remaining <u>Disputed Unsecured Claim</u> of Resource Management Groups, Inc. (improperly listed by the clerk of the instant court on the Docket Report as "M'Ware Corporation") (Claim #8), in the amount of $1,293,281.41, remains disputed for many reasons most succinctly because the Claim is invalid because it was filed by Chad Heckman, attorney for James Norton and M'Ware Corporation only pursuant to his Notice of Appearance filed with the instant court. Attorney Heckman had no authority to sign Claim # 8 on behalf of Resource Management Groups, Inc. The schedules of petition to be amended and any necessary motion filed by Debtor to delete Resource Management Groups, Inc. Claim #8.

After petition schedules are amended to adjust the value of Debtor's interest in NJ real estate trust to reflect originally scheduled allowed related claims as offsets to the asset and delete all originally petition scheduled debts by any necessary motions and amendments to the originally filed petition, Debtor's Total Unsecured Debts will total $1,911.05, Secured Debts will total $317,270.11, Priority Debts will total $4,319.32 and causing a grand total of debts amounting to $323,500.48.

## ARTICLE III

### Feasibility

Debtor's ability to pay all amended scheduled debts with any required statutory interest (if any) is most definite. Debtor's ability to completely finance the Plan of Reorganization will initially come from regular monthly income of social security disability checks currently $1,753.00 monthly, $800 of monthly consulting income from Purple Angel marketing LLC (company), company provided reimbursements of basic living expenses so long as the Debtor is classified as fully disabled and monthly advances against quarterly dividends from the company, as and if required. Once a settlement of the NYC personal injury suit is reached whether by consent or judgment, the net amount received after attorneys fees/costs (if any), will be used to first pay down (or completely) the remaining balance of the State of Florida Priority tax claim, then Secured claim of GMAC, the only secured creditor and then if any residual will be used proportionately to pay any remaining balance due Unsecured creditors.

Additionally, Debtor's beneficial interest in The Stafford Realty Trust has a net value of $1,041,487.20 (excluding Michael Moran's capital deficiency account amount of $486,719.22). The asset of the Trust is an approximate $2 million mortgage receivable, secured by a mortgage on 15.91 acres of real estate in Manahawkin, NJ and is the highest elevation on the NJ coast just north of Atlantic City, NJ and surrounded by desirable single family home developments. The property is NOW fully approved to build 15+ single family luxury homes. Once a settlement of the mortgage receivable due from the NJ-Stafford Real Estate Trust is obtained by consent or by judgment, the net amount received after attorneys fees/costs (if any), will be used to first pay down (or completely) the remaining balance of the State of Florida Priority tax claim, then Secured claim of GMAC, the only secured creditor and then if any residual will be used proportionately to pay any remaining balance due Unsecured creditors.

## ARTICLE IV

## Means of Execution

In order to provide an adequate means for the execution of the Plan, the Debtor proposes: (1) the continuation and restructuring of the Debtor's financial affairs; (2) curing or waiving any judgments or default; (3) modification in interest rates or other terms of the outstanding mortgage loan; (4) retention by the Debtor of all property of the Estate (not otherwise provided for); (5) discharge of debts that arose before the date of confirmation and discharge of any debt within the parameters of Code §1141(d)(1) to the extent not provided for in the Plan or in the Order of Confirmation; (6) vesting all property of the Estate in the Debtor upon confirmation of the Plan, unless otherwise provided in the Plan, free and clear of all claims and interests of creditors [except for those described by Code §1141(d)(2) and (d)(3)]; (7) paying secured creditors, with the creditors retaining their liens until the secured claim, as modified, is paid in full; and, (8) the dedication of Debtor's disposable income to the payment of the allowed claims for the 36 months beginning on the date the first payment is due under the Plan. Schedules showing Debtor's 36-month cash flow forecast, Debtor's detailed living costs, and creditors by Class are attached hereto and, by his signature below, Debtor verifies under penalties of perjury that the living costs set forth on the schedule are true and accurate.

## ARTICLE V

## Effective Date of the Plan

The Effective Date of the Plan will be not later than 30 days after the Final Date of Confirmation which is the date upon which the Order entered by the Bankruptcy Court confirming the Plan becomes final and all appeals have been resolved in the event an appeal is taken. If no appeal is taken, such date shall be the Confirmation date. Confirmation means the order entered after the confirmation hearing which confirms the Plan, when such order becomes final and the time for appeal has expired. In the event of an appeal, confirmation shall be deemed to have occurred notwithstanding such appeal, unless superseded as a bond or other security is posted by the creditor who filed the appeal. The Debtor may, however, implement portions of the Plan prior to the Effective Date if feasible. The Effective Date for Payment will be the later of the Effective Date of Plan or 30 days after the final resolution, with no appeals pending.

## ARTICLE VI

## Discharge

The confirmation of this Plan will constitute a finding of fact and conclusion of law by the Court that the Debtor is entitled to discharge pursuant to Code §§727 and 1141, and that no debts are exempted from discharge under Code §523. No hearing on the Debtor's discharge or discharge-ability of any debts will be required after confirmation. Pursuant to Code §1141, the Debtor will be discharged and released of any and all debts and liability. The confirmation of this Plan will also constitute an adjudication that the discharge voids any judgment at any time obtained, to the extent that such a judgment is a determination of the personal liability of the Debtor with respect to any debt discharged under Code §1141, and to the extent that such a judgment may constitute a lien against assets of the Debtor, whether or not discharge of such debt is waived; and, that the discharge operates as an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect recover, or offset any such debt or lien as a personal liability of the Debtor, or from

property of the Debtor, whether discharge of such debt has been waived.

## ARTICLE VII

### Jurisdiction of the Court

Upon confirmation, the Debtor will be re-vested with its assets subject only to outstanding liens created by or not avoided by the Debtor under the Bankruptcy Code and the Debtor shall be entitled to manage its affairs without further order of the Bankruptcy Court, and it shall be discharged from all of its debts except as provided for under this Plan.

Subject to the forgoing, the Court shall retain jurisdiction for the following purposes: (1) the classification of the claim of any creditor and the reexamination of claims that have been allowed for purposes of voting, and the determination of such objections as may be filed to the claims of creditors; failure by the Debtor to object, or to examine any claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or to reexamine the claim in whole or in part; (2) the determination of all causes of action, controversies, disputes, and conflicts involving the Debtor or its assets arising prior to the confirmation date, whether or not subject to an action pending as of the confirmation date, between the Debtor and any other party, including but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code; (3) the correction of any defect, the curing of any omission, or reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan; (4) the modification of this Plan after confirmation pursuant to the Bankruptcy Code and Rules; (5) the enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an allowed claim; (6) the making of such orders as may be necessary or appropriate to carry out the provisions of this Plan; (7) the adjudication of all claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof; (8) entry of order to recover all assets and properties of the Debtor wherever located.; (9) the entry of such orders as are necessary or appropriate to carry out the provisions of the Plan; and (10) the entry of an order concluding and terminating this case.

Except as provided in this article, the Court's jurisdiction will terminate as to this case on the Effective Date of the Plan, and this case will be terminated and closed on the later of (a) the day after final payment is made to the creditors described in Code §507(a)(7); or (b) the final disposition of all matters, if any, pending on said date, subject to being reopened upon application of a party in interest to consider a matter within the scope of the jurisdiction retained above.

## ARTICLE VIII

### Miscellaneous

Except for U. S. Trustee claims, all applications for allowance of administrative expenses pursuant to Code §507(a)(1) shall be filed and served on the Debtor within thirty days of the date of the order of confirmation.

All creditors shall waive all interest on unconfirmed loans, late charges, penalties, attorney fees, court costs, and any other charges of any kind not expressly set forth in this Plan.   No default shall be declared under this Plan unless a payment shall be overdue by ninety days.

All claims arising from the rejection of executory contracts under this Plan shall be filed within

twenty days after the confirmation date.   All such claims unless specifically admitted by Debtor, shall be treated as disputed.   Any such claims not filed within the required time periods are being discharged.

Any party other than Debtor objecting to claims that existed or arose on or before the petition date, or that are listed as undisputed, non-contingent and liquidated in Debtor's Schedules D, E or F must file such objection on a date to be sent by the Court and upon notice to the creditors.   All objections of the Debtor to claims will be filed within 60 days after the Effective Date of the Plan.

Since all Classes are impaired, in the event any Class fails to accept the Plan, Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.   Debtor also reserves the right to make application to the Bankruptcy Court for an order authorizing it to revoke and withdraw the Plan at any time prior to the date of Confirmation.   If the Plan is revoked or withdrawn, or not confirmed, then the Plan shall be deemed null and void.   In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other person.

If a party in interest holding an administrative or pre petition tax claim fails to receive payment as provided under the Plan, or if any party in interest questions the Debtor's compliance with the Plan in any way other than nonpayment of an allowed secured claim, such party shall give the Debtor written notice thereof, and the Debtor may cure such noncompliance, if any, within twenty days from its receipt of such notice.

* * *

RESPECTFULLY SUBMITTED on this 15th day of October, 2010.


ROBERT C. WALLERIUS, Debtor Pro Se

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS                         CASE NO. 10- 40401-LMK

Debtor.

Chapter 11

_____/

**DEBTOR'S EXHIBITS SUPPORTING**
**PLAN OF REORGANIZATION & DISCLOSURE STATEMENT**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS

CASE NO. 10- 40401-LMK

Debtor.

Chapter 11

_____/

**DEBTOR'S EXHIBITS SUPPORTING
PLAN OF REORGANIZATION & DISCLOSURE STATEMENT**

**CURRENT MEDICAL CONDITION**



PETER E. LOEB, MD, FAAOS, CIME
*Board-Certified Orthopaedic Surgeon*

Orthopaedic Sports Medicine, Arthroscopic Surgery
Reconstructive Hip, Knee and Shoulder Surgery
General Orthopaedic Surgery
Independent Medical Examinations

CRAIG A. BUTLER, MD, MBA, FAAOS, CIME
*Board-Certified Orthopaedic Surgeon*

Orthopaedic Sports Medicine
Occupational and General Orthopaedics
Independent Medical Examinations

R. SPENCER STOETZEL, MD
*Board-Certified Orthopaedic Surgeon*

Spine Surgery
Joint Replacement/Arthritis Surgery
General Orthopaedic/Hand Surgery

## NORTH FLORIDA SPORTS MEDICINE & ORTHOPAEDIC CENTER

1911 Miccosukee Road • Tallahassee, Florida 32308-5321
(850) 878-2549 • Fax (850) 878-9334

To whom it may Concern, 10/13/10

Mr. Wallerius had a Cervical Fusion on 9/24/10. It was more involved than we had anticipated. He is currently wearing a Cervical Collar and will not be able to return to full Dash work until 11/1/2010

Thanks,
S. Stoetzel

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS

Debtor.

_____/

CASE NO. 10- 40401-LMK

Chapter 11

## DEBTOR'S EXHIBITS SUPPORTING
## PLAN OF REORGANIZATION & DISCLOSURE STATEMENT

**PROOF OF SUCCESS OF PURPLE ANGEL MARKETING LLC NEW BUSINESS LAUNCH OF
DEBTOR PERMITTING MONTHLY GROWING INCOME TO SUPPORT BASIC LIVING
COSTS OF THE HOME OFFICE AND LLIVING COSTS PLUS PROVIDE SUFFICIENT
INCOME TO FUND 36 MONTHS OF PAYMENTS TO ALL BONA FIDE CREDITORS**



# Bank of America 

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 6
Statement Period
09/01/10 through 09/30/10
E0  P PA  0A 67
Enclosures 0
Account Number   8980 3170 4574

BD 10/07 0  0904 952 3      299 028520 #001 AV 0.335

PURPLE ANGEL MARKETING LLC
3084 MCCORD BLVD
TALLAHASSEE FL 32303-1715

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
## www.bankofamerica.com



For additional information or service, you may call:
1.888.BUSINESS (1.888.287.4637)

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Deposit Accounts

## Business Economy Checking

### PURPLE ANGEL MARKETING LLC

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | 8980 3170 4574 | Statement Beginning Balance | $1,489.89 |
| Statement Period | 09/01/10 through 09/30/10 | Amount of Deposits/Credits | $16,385.00 |
| Number of Deposits/Credits | 9 | Amount of Withdrawals/Debits | $15,534.24 |
| Number of Withdrawals/Debits | 98 | Statement Ending Balance | $2,340.65 |
| Number of Deposited Items | 0 | | |
| Number of Days in Cycle | 30 | Average Ledger Balance | $960.16 |
| | | Service Charge | $0.00 |

Congratulations! You have had 74 qualifying Bank of America Small Business Check Card transaction(s) post to your account during the previous monthly statement period. You have successfully achieved your target and the monthly maintenance fee on your business checking account has been waived.

Help avoid occasional Overdraft & NSF: Returned Item fees. Set up Alerts to get messages by email or text when your balance is low. Use Overdraft Protection to transfer available funds from linked savings, credit card, or credit line to your checking account to help cover items that would overdraw your account. Call us for details.

Recycled Paper



# Bank of America

PURPLE ANGEL MARKETING LLC

Page 3 of 6
Statement Period
09/01/10 through 09/30/10
EO  P PA  0A 67
Enclosures 0
Account Number  8980 3170 4574

## Withdrawals and Debits - Continued
### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 09/14 | 67.80 | ATM/Check Card Purchase Debit On 09/11/10 Card # 4635760017320908 Claim #3607-14SEP10 Cto*gotomypc.Com    888-259-3826 | 965409140006702 |
| 09/17 | 12.00 | Wire Transfer Fee | 903709170134703 |
| 09/20 | 200.00 | Sprint8006396111 Des:Achbillpay ID:xxxxx9311 Indn:Paycheck PC    Co ID:2521616695 Tel | 902360010669528 |
| 09/21 | 35.00 | Overdraft Item Fee For Activity Of 09-20 Electronic Transaction | 953909200009102 |
| 09/21 | 35.00 | Overdraft Item Fee For Activity Of 09-20 Electronic Transaction | 953909200009103 |
| 09/21 | 35.00 | Overdraft Item Fee For Activity Of 09-20 Electronic Transaction | 953909200009104 |
| 09/21 | 35.00 | Overdraft Item Fee For Activity Of 09-20 Electronic Transaction | 953909200009105 |
| 09/21 | 12.00 | Wire Transfer Fee | 903709210118177 |
| 09/23 | 35.00 | Overdraft Item Fee For Activity Of 09-22 Electronic Transaction | 953909220005159 |
| 09/24 | 1,500.00 | FL Tlr cash withdrawal from Chk 4574 Banking Ctr North Tallahassee    #0001394 FL Confirmation# 5335139339 | 957709249905514 |
| 09/24 | 12.00 | Wire Transfer Fee | 903709240140311 |
| 09/28 | 200.00 | Sprint8006396111 Des:Achbillpay ID:xxxxx9311 Indn:Paycheck PC    Co ID:2521616695 Ppd | 902370009777983 |
| 09/30 | 12.00 | Wire Transfer Fee | 903709300309110 |

**Card Account # 4635 7600 1732 0908:**

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 09/01 | 96.25 | Wal-Mart Super  09/01 #000267249 Purchase | 946309010267249 |
| 09/01 | 21.98 | Winn Dixie 381  09/01 #000431665 Purchase | 946309010431665 |
| 09/01 | 7.90 | Usps 118892955  09/01 #000103071 Purchase | 946309010103071 |
| 09/02 | 221.72 | CheckCard  0831 Cablevision #7870 | 929908310271056 |
| 09/03 | 8.14 | Wal-Mart Super  09/03 #000801181 Purchase | 946309030801181 |
| 09/07 | 109.90 | Wal-Mart #4427  09/03 #000646295 Purchase | 946309030646295 |
| 09/07 | 109.90 | Wal-Mart #4427  09/03 #000645837 Purchase | 946309030645837 |
| 09/08 | 54.28 | Wal-Mart #1408  09/07 #000531899 Purchase | 946309070531899 |
| 09/09 | 64.49 | Office Depot O  09/09 #000510932 Purchase | 946309090510932 |
| 09/09 | 53.73 | CheckCard  0907 Office Depot #2669 | 929909070913759 |
| 09/09 | 20.00 | CheckCard  0908 Constant Contact 1 | 929909081762815 |
| 09/10 | 608.11 | CheckCard  0909 Geico | 929909092011815 |
| 09/10 | 320.70 | Wal-Mart Super  09/09 #000965122 Purchase | 946309090965122 |
| 09/10 | 54.58 | Wal-Mart #4427  09/09 #000726234 Purchase | 946309090726234 |
| 09/10 | 42.89 | Wal-Mart Super  09/09 #000692946 Purchase | 946309090692946 |
| 09/10 | 26.89 | Winn Dixie 381  09/09 #000209065 Purchase | 946309090209065 |
| 09/13 | 1,000.00 | CheckCard  0909 Federal Modification Gr | 929909091004412 |
| Subtotal | 2,821.63 | | |

**Card Account # 4635 7600 1732 0924:**

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 09/03 | 62.00 | 3618 North Mon  09/03 #000008803 Withdrwl | 946309030008803 |
| 09/03 | 2.00 | 3618 North Mon  09/03 #000008803 Withdrwl | 946309030008803 |
| 09/07 | 369.32 | CheckCard  0906 Extendedstay #305 | 929909061662430 |
| 09/09 | 80.79 | Wal-Mart #1408  09/09 #000526675 Purchase | 946309090526675 |
| 09/10 | 11.69 | Chevron/Florid  09/10 #000065569 Purchase | 946309100065569 |
| 09/13 | 169.35 | CheckCard  0911 Ups*0000R1336V07312010 | 929909112148837 |
| 09/13 | 116.38 | CheckCard  0911 Ups*0000R1336V08142010 | 929909112148839 |
| 09/13 | 43.65 | CheckCard  0911 Ups*0000R1336V08072010 | 929909112148840 |
| 09/13 | 40.83 | Cvs 04478 0447  09/10 #000508301 Purchase | 946309100508301 |
| 09/13 | 37.57 | CheckCard  0911 Ups*0000R1336V08212010 | 929909112148828 |

Recycled Paper



# Bank of America

PURPLE ANGEL MARKETING LLC

Page 5 of 6
Statement Period
09/01/10 through 09/30/10
E0   P PA   0A 67
Enclosures 0
Account Number  8980 3170 4574

## Total Overdraft Fees and NSF: Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $210.00 | $525.00 |
| Total NSF: Returned Item Fees | $0.00 | $0.00 |

We refunded to you a total of $35.00 in fees for Overdraft and/or NSF: Returned Items this statement period and a total of $35.00 in fees for Overdraft and/or NSF: Returned Items this year.

## Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 09/01 | 1,363.76 | 09/13 | 194.00 | 09/22 | 15.55 - |
| 09/02 | 48.69 | 09/14 | 981.38 | 09/23 | 50.55 - |
| 09/03 | 664.55 | 09/15 | 911.88 | 09/24 | 1,372.77 |
| 09/07 | 75.43 | 09/16 | 785.34 | 09/27 | 819.65 |
| 09/08 | 21.15 | 09/17 | 2,157.55 | 09/28 | 365.86 |
| 09/09 | 3,030.14 | 09/20 | 770.60 - | 09/29 | 274.56 |
| 09/10 | 1,715.11 | 09/21 | 34.57 | 09/30 | 2,340.65 |

Recycled Paper



## Bank of America 

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

HH

Page 1 of 6
Statement Period
08/01/10 through 08/31/10
E0    P  PA    0A 67
Enclosures 0
Account Number  8980 3170 4574

BD 09/08 0  0904 417      734 037932 #001 AV 0.335

PURPLE ANGEL MARKETING LLC
3084 MCCORD BLVD
TALLAHASSEE FL 32303-1715

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

### Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:
☎  1.888.BUSINESS (1.888.287.4637)

Or you may write to:
✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Beginning July 16, 2010, most cash deposits, cash withdrawals and transfers between Bank of America deposit accounts made before midnight will be included in the balance used to pay transactions. Exceptions apply. Visit www.bankofamerica.com/getmoretime or contact an associate for more information.

♺ Recycled Paper



**Bank of America** 

PURPLE ANGEL MARKETING LLC

Page 3 of 6
Statement Period
08/01/10 through 08/31/10
E0  P PA  0A 67
Enclosures 0
Account Number  8980 3170 4574

## Withdrawals and Debits
### Checks

| Check Number | Amount ($) | Date Posted | Bank Reference | Check Number | Amount ($) | Date Posted | Bank Reference |
|---|---|---|---|---|---|---|---|
| 997 | 20.00 | 08/16 | 813106692336713 | 998 | 246.38 | 08/31 | 813106750014596 |

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 08/03 | 432.00 | Sprint8006396111 Des:Achbillpay ID:xxxxx9311 Indn:Paycheck PC          Co ID:2521616695 Tel | 902314009243858 |
| 08/04 | 35.00 | Overdraft Item Fee For Activity Of 08-03 Electronic Transaction | 953908030009818 |
| 08/04 | 35.00 | Overdraft Item Fee For Activity Of 08-03 Electronic Transaction | 953908030009819 |
| 08/05 | 35.00 | Overdraft Item Fee For Activity Of 08-04 Electronic Transaction | 953908040007439 |
| 08/05 | 12.00 | Wire Transfer Fee | 903708050125857 |
| 08/10 | 35.00 | Overdraft Item Fee For Activity Of 08-09 Electronic Transaction | 953908090009643 |
| 08/10 | 35.00 | Overdraft Item Fee For Activity Of 08-09 Electronic Transaction | 953908090009644 |
| 08/10 | 35.00 | Overdraft Item Fee For Activity Of 08-09 Electronic Transaction | 953908090009645 |
| 08/10 | 35.00 | Overdraft Item Fee For Activity Of 08-09 Electronic Transaction | 953908090009646 |
| 08/10 | 12.00 | Wire Transfer Fee | 903708100122588 |
| 08/20 | 195.22 | Sprint8006396111 Des:Achbillpay ID:xxxxx9311 Indn:Paycheck PC          Co ID:2521616695 Ppd | 902331004860919 |
| 08/20 | 12.00 | Wire Transfer Fee | 903708200138450 |
| 08/27 | 12.00 | Wire Transfer Fee | 903708270147990 |
| 08/31 | 930.38 | Wire Type:Wire Out Date:100831 Time:1547 Et Trn:2010083100319870 Service Ref:013818 Bnf:Grace Hernandez ID:2182948 Bnf Bk:Altura Credi T Union ID:322281235 Pmt Det:50311160 | 903708310319870 |
| 08/31 | 400.00 | Sprint8006396111 Des:Achbillpay ID:xxxxx9311 Indn:Paycheck PC          Co ID:2521616695 Ppd | 902342008551997 |
| 08/31 | 25.00 | Wire Transfer Fee | 903708310270098 |
| 08/31 | 12.00 | Wire Transfer Fee | 903708310060943 |
| 08/31 | 12.00 | Wire Transfer Fee | 903708310294747 |

**Card Account # 4635 7600 1732 0908:**

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 08/02 | 209.90 | Wal-Mart #4427  07/30 #000644071 Purchase | 946307300644071 |
| 08/02 | 162.33 | CheckCard  0801 Pln*priceline.Com Htl | 929908012199549 |
| 08/02 | 149.90 | Wal-Mart #4427  07/30 #000747073 Purchase | 946307300747073 |
| 08/02 | 69.51 | Wal-Mart #4427  07/30 #000816917 Purchase | 946307300816917 |
| 08/02 | 40.51 | Winn Dixie 381  07/31 #000125874 Purchase | 946307310125874 |
| 08/03 | 297.92 | CheckCard  0729 Country Hearth Inn & Su | 929907290555515 |
| 08/04 | 14.99 | CheckCard  0802 Mcafee.Com | 929908020261590 |
| 08/05 | 229.90 | Wal-Mart #4427  08/05 #000217752 Purchase | 946308050217752 |
| 08/05 | 159.90 | Wal-Mart #4427  08/05 #000153412 Purchase | 946308050153412 |
| 08/05 | 75.55 | Wal-Mart #4427  08/05 #000150351 Purchase | 946308050150351 |
| 08/06 | 183.60 | CheckCard  0805 Touchtone Communication | 929908052335001 |
| 08/06 | 38.23 | Wal-Mart #4427  08/06 #000493859 Purchase | 946308060493859 |
| 08/09 | 297.92 | CheckCard  0805 Country Hearth Inn & Su | 929908050767026 |
| 08/09 | 143.84 | CheckCard  0805 Network Solutions, Llc | 929908050257166 |
| 08/09 | 112.55 | Winn Dixie 381  08/09 #000305852 Purchase | 946308090305852 |





PURPLE ANGEL MARKETING LLC

Page 5 of 6
Statement Period
08/01/10 through 08/31/10
E0   P PA   0A 67
Enclosures 0
Account Number  8980 3170 4574

## Withdrawals and Debits - Continued
## Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| **Subtotal** | **7,417.92** | | |
| **Card Account # 4635 7600 1732 0924:** | | | |
| 08/13 | 7.06 | Chevron/Florid  08/13 #000254581 Purchase | 946308130254581 |
| 08/18 | 62.23 | Wal-Mart Super  08/18 #000962274 Purchase | 946308180962274 |
| 08/18 | 34.05 | Wal-Mart Super  08/18 #000355903 Purchase | 946308180355903 |
| 08/25 | 119.90 | Wal-Mart #4427  08/25 #000833347 Purchase | 946308250833347 |
| 08/25 | 6.73 | Wal-Mart Super  08/25 #000602388 Purchase | 946308250602388 |
| 08/27 | 62.00 | 3618 North Mon  08/27 #000007815 Withdrwl | 946308270007815 |
| 08/27 | 17.01 | CheckCard  0827 Texaco 0030379 | 946308270943676 |
| 08/27 | 2.00 | 3618 North Mon  08/27 #000007815 Withdrwl | 946308270007815 |
| 08/30 | 15.02 | CheckCard  0828 Texaco 0030379 | 946308280805773 |
| 08/31 | 36.82 | CheckCard  0830 Google *laptoprescue | 929908301259325 |
| 08/31 | 12.00 | CheckCard  0831 Texaco 0030379 | 946308310930324 |
| **Subtotal** | **374.82** | | |

## Total Overdraft Fees and NSF: Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $245.00 | $315.00 |
| Total NSF: Returned Item Fees | $0.00 | $0.00 |

## Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 08/01 | 693.23 | 08/11 | 821.29 | 08/23 | 1,420.14 |
| 08/02 | 61.08 | 08/12 | 439.68 | 08/25 | 772.55 |
| 08/03 | 668.84 - | 08/13 | 77.90 | 08/26 | 234.60 |
| 08/04 | 753.83 - | 08/16 | 6.57 - | 08/27 | 2,141.59 |
| 08/05 | 733.82 | 08/17 | 1,398.83 | 08/30 | 1,209.28 |
| 08/06 | 511.99 | 08/18 | 1,302.55 | 08/31 | 1,489.89 |
| 08/09 | 216.00 - | 08/19 | 464.28 | | |
| 08/10 | 831.29 | 08/20 | 1,939.74 | | |

Recycled Paper



**Bank of America**

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

WX 0000     000 024 006089 #001 SP 0.357
PURPLE ANGEL MARKETING LLC
3084 MCCORD BLVD
TALLAHASSEE FL  32303-1715

DATE: 08/31/10
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: 898031704574

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $930.38

TRANSACTION REF:    2010083100352175        SERVICE REF: 003984
SENDER'S REF:       2010083100319870        RELATED REF: 50311160
IMAD:               20100831QMGFT015003984
ORIGINATOR:         PURPLE ANGEL MARKETING LLC    ID: 898031704574
ORIGINATOR'S BANK:  BANK OF AMERICA, N.A.         ID: BOFAUS3N
SENDING BANK:       ALTURA CREDIT UNION           ID: 322281235

PAYMENT DETAIL:     RTN YR SNDREF 50311160 DD100831 BY ALTURA CREDIT UNION UTA ACCOUNT CLO
                    SED

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $1,500.00

TRANSACTION REF:    2010083100223445
SENDER'S REF:       31392276
ORIGINATOR:         SPECIAL FINANCING COMPANY  LLC    ID: 009419158326

---

THE FOLLOWING WIRE WAS DEBITED TODAY:                     USD AMOUNT $930.38

TRANSACTION REF:    2010083100319870        SERVICE REF: 013818
RELATED REF:        50311160                IMAD: 20100831B6B7HU2R013818
INSTRUCTING BANK:   CONSUMER                ID: OLBS
BENEFICIARY:        GRACE HERNANDEZ         ID: 2182948
BENEFICIARY'S BANK: ALTURA CREDIT UNION     ID: 322281235

---

Recycled Paper



## Bank of America

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 5
Statement Period
07/01/10 through 07/31/10
E0  P PA  0A 67
Enclosures 0
Account Number  8980 3170 4574

BD 08/09 0  0904 275 4      300 033354 #001 AV 0.335

**PURPLE ANGEL MARKETING LLC**
**3084 MCCORD BLVD**
**TALLAHASSEE FL 32303-1715**

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
## www.bankofamerica.com

For additional information or service, you may call:
1.888.BUSINESS (1.888.287.4637)

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Effective 8/7/10, Overdraft Protection transfers from a savings account will generally be made for the amount required to cover the overdraft & the transfer fee. Overdraft protection can be a great way to help avoid overdrafts on your checking account. If you haven't already signed up, call the number on your statement or visit your nearby banking center.

Beginning July 16, 2010, most cash deposits, cash withdrawals and transfers between Bank of America deposit accounts made before midnight will be included in the balance used to pay transactions. Exceptions apply. Visit www.bankofamerica.com/getmoretime or contact an associate for more information.

Recycled Paper

 

**Bank of America**

PURPLE ANGEL MARKETING LLC

ℍℍ

Page 3 of 5
Statement Period
07/01/10 through 07/31/10
E0  P PA  0A 67
Enclosures 0
Account Number  8980 3170 4574

## Withdrawals and Debits - Continued

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 07/06 | 12.00 | Wire Transfer Fee | 903707060161356 |
| 07/07 | 10.00 | Transfer Purple Angel Marketi:Purple Angel Marketi Confirmation# 6451741993 | 957307077519415 |
| 07/08 | 3.00 | External transfer fee - 3 Day -  07/07/2010 Confirmation: 48190822 | 943207080002393 |
| 07/13 | 12.00 | Wire Transfer Fee | 903707130115958 |
| 07/15 | 12.00 | Wire Transfer Fee | 903707150145112 |
| 07/16 | 750.00 | FL Tlr cash withdrawal from Chk 4574 Banking Ctr North Tallahassee        #0001394 FL Confirmation# 0630959783 | 957507169942856 |
| 07/16 | 12.00 | Wire Transfer Fee | 903707160134432 |
| 07/23 | 900.00 | FL Tlr cash withdrawal from Chk 4574 Banking Ctr North Tallahassee        #0001394 FL Confirmation# 0191513130 | 957507239902709 |
| 07/23 | 12.00 | Wire Transfer Fee | 903707230137835 |
| 07/26 | 450.00 | Capital One      Des:Online Pmt ID:020739910101061 Indn:2555007361Hunter Lewis  Co ID:9279744991 Ccd | 902307008243341 |
| 07/28 | 35.00 | Overdraft Item Fee For Activity Of 07-27 Electronic Transaction | 953907270007714 |
| 07/28 | 35.00 | Overdraft Item Fee For Activity Of 07-27 Check #0000000993 | 953907270007713 |
| 07/29 | 12.00 | Wire Transfer Fee | 903707290146636 |
| **Card Account # 4635 7600 1732 0908:** | | | |
| 07/07 | 600.00 | BkofAmerica ATM 07/07 #000008278 Withdrwl | 946307070008278 |
| 07/12 | 109.90 | Wal-Mart #4427  07/10 #000392850 Purchase | 946307100392850 |
| 07/12 | 65.60 | Lowe's #716      07/11 #000890409 Purchase | 946307110890409 |
| 07/12 | 12.70 | CheckCard  0709 Milano Pizzeria | 929907091861876 |
| 07/14 | 500.00 | BkofAmerica ATM 07/14 #000004953 Withdrwl | 946307140004953 |
| 07/14 | 219.90 | Wal-Mart #4427  07/13 #000177642 Purchase | 946307130177642 |
| 07/14 | 159.90 | Wal-Mart #4427  07/13 #000677750 Purchase | 946307130677750 |
| 07/15 | 209.99 | CheckCard  0713 Intown Suites (Xwk) | 929907130724678 |
| 07/15 | 209.99 | CheckCard  0713 Intown Suites (Xwk) | 929907130724676 |
| 07/15 | 77.08 | Winn Dixie 381  07/14 #000205237 Purchase | 946307140205237 |
| 07/19 | 63.65 | Wal-Mart #4427  07/16 #000466297 Purchase | 946307160466297 |
| 07/19 | 62.56 | Walgreen Compa  07/18 #000235326 Purchase | 946307180235326 |
| 07/19 | 48.26 | CheckCard  0717 Applebees 750926191452 | 929907170084681 |
| 07/19 | 44.62 | Wal-Mart #4427  07/19 #000354821 Purchase | 946307190354821 |
| 07/19 | 29.20 | Winn Dixie 381  07/17 #000061277 Purchase | 946307170061277 |
| 07/19 | 20.46 | Fresh Mkt-047   07/16 #000426116 Purchase | 946307160426116 |
| 07/21 | 20.10 | CheckCard  0721 Texaco 0030379 | 946307210718586 |
| 07/22 | 72.03 | CheckCard  0718 Angelo's Seaf Rest Inc | 929907181861230 |
| 07/26 | 209.90 | Wal-Mart #4427  07/24 #000176580 Purchase | 946307240176580 |
| 07/26 | 150.00 | CheckCard  0723 Usairways  03723967382 | 929907231671787 |
| 07/26 | 110.56 | CheckCard  0724 Pln*priceline.Com Htl | 929907241551370 |
| 07/26 | 75.00 | CheckCard  0723 Usairways  03723967438 | 929907231672488 |
| 07/26 | 25.00 | CheckCard  0723 Usairways  03723967438 | 929907231672496 |
| 07/26 | 5.00 | CheckCard  0723 Usairways  03723967437 | 929907231672494 |
| 07/27 | 280.00 | BkofAmerica ATM 07/27 #000009219 Withdrwl | 946307270009219 |
| 07/30 | 92.00 | Wal-Mart #4427  07/29 #000268248 Purchase | 946307290268248 |
| **Subtotal** | **3,473.40** | | |
| **Card Account # 4635 7600 1732 0924:** | | | |
| 07/20 | 55.07 | Winn Dixie 381  07/20 #000147081 Purchase | 946307200147081 |
| **Subtotal** | **55.07** | | |



# Bank of America

HH

## How To Balance Your Bank of America Account

**FIRST, start with your Account Register/Checkbook:**

1. List your Account Register/Checkbook Balance here ........................................................ $ _____

2. Subtract any service charges or other deductions not previously recorded that are listed on this statement ................ $ _____

3. Add any credits not previously recorded that are listed on this statement (for example interest) ........................ $ _____

4. This is your NEW ACCOUNT REGISTER BALANCE ........................................................ $ _____

**NOW, with your Account Statement:**

1. List your Statement Ending Balance here ........................................................ $ _____

2. Add any deposits not shown on this statement ........................................................ $ _____

_____

_____

**SUBTOTAL** ........................................................ $ _____

3. List and total all outstanding checks, ATM, Check Card and other electronic withdrawals

| Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | |
|---|---|---|---|---|---|
| Date/Check # | Amount | Date/Check # | Amount | Date/Check # | Amount |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

4. TOTAL OF OUTSTANDING CHECKS, ATM, Check Card and other electronic withdrawals ........................ $ _____

5. Subtract total outstanding checks, ATM, Check Card and other electronic withdrawals from Subtotal
This Balance should match your new Account Register Balance ........................................................ $ _____

Upon receipt of your statement, differences, if any, should be reported to the bank promptly in writing and in accordance with provisions in your deposit agreement.

## IMPORTANT INFORMATION FOR BANK DEPOSIT ACCOUNTS

**Change of Address.** Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Deposit Agreement.** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule, which contain the current version of the terms and conditions of your account relationship, may be obtained at our banking centers.

**Electronic Transfers: In case of errors or questions about your electronic transfers**
If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
* Tell us your name and account number.
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
* Tell us the dollar amount of the suspected error.
For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calender days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.
For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting Other Problems.** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.

**Direct Deposits.** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

**Bank of America, N.A. Member FDIC and**    **Equal Housing Lender**

Recycled Paper



# Bank of America 

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

IHH

Page 1 of 3
Statement Period
06/01/10 through 06/30/10
E0  P PA  0A 67
Enclosures 0
Account Number  8980 3170 4574

BD 07/08 0  0904 543 4      633 008531 #001 AV 0.335

PURPLE ANGEL MARKETING LLC
3084 MCCORD BLVD
TALLAHASSEE FL 32303-1715

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
## www.bankofamerica.com

For additional information or service, you may call:
1.888.BUSINESS (1.888.287.4637)

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Effective 8/7/10, Overdraft Protection transfers from a savings account will generally be made for the amount required to cover the overdraft & the transfer fee. Overdraft protection can be a great way to help avoid overdrafts on your checking account. If you haven't already signed up, call the number on your statement or visit your nearby banking center.

Our general policy is to make funds from check deposits available by the first business day after the day of deposit. If we place a hold on a check deposit for accts open 30 days or more, we've now reduced the length of the hold to 2 business days, or in unusual circumstances up to 7 business days, after the day of deposit. This amends the Deposit Agreement.

Recycled Paper

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS

CASE NO. 10- 40401-LMK

Debtor.

Chapter 11

_____ /

**DEBTOR'S EXHIBITS SUPPORTING**
**PLAN OF REORGANIZATION & DISCLOSURE STATEMENT**

**INVALID CLAIM OF RESOURCE MANAGEMENT GROUPS, INC.**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

In re:

                                            Case No.: 10-bk-40401-LMK

Robert Wallerius,

                                            Chapter 11

            Debtor.

_____/

## NOTICE OF APPEARANCE

      The undersigned serves this Notice of Appearance in this cause on behalf of M-Ware Corporation and James Norton, creditors in this estate, and requests that he be served with copies of all pleadings and notices of hearings in this cause.

                                      **Thrasher & Heckman, P.A.**
                                      *Attorneys for Creditor*

                                      By:   /s/ Chad D. Heckman
                                        Chad D. Heckman
                                        Florida Bar No. 0526029
                                        908 North Gadsden Street
                                        Tallahassee, Florida 32303-6316
                                        Voice: (850) 224-8685
                                        Fax: (850) 224-1254
                                        Email: chad@thrasherandheckman.com
                                        Web: www.thrasherandheckman.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS

CASE NO. 10- 40401-LMK

Debtor.

Chapter 11

_____/

## DEBTOR'S EXHIBITS SUPPORTING
## PLAN OF REORGANIZATION & DISCLOSURE STATEMENT

## NY PERSONAL INJURY SUIT


**YAHOO!** MAIL
Classic

**Re: Fw: YOUR CLAIM #0500212826**                          Monday, September 20, 2010 4:29 PM

**From:** "audra.dyckman@21st.com" <audra.dyckman@21st.com>
  **To:** robertwallerius@prodigy.net
  **Cc:** "EsquireJason Egan" <Jason.H.Egan@usdoj.gov>

Your underinsured motorist coverage is $250,000k. As I stated, this
coverage is not triggered until the liability claim is exhausted. Once that
occurrs, we are afforded an offset of the liability limits.
Hereford's liability coverage is $100,000 per person. Therefore the most
you can recover under your own auto policy is $150,000. (250-150).

Also I had to delete the emails containing your tax returns.  They are so
large that they won't open in our email system. I'm going to ask that you
send them directly to our documentmanagement center.  Their email is
documentmanagementcenter@exchange.21st.com.  Put the claim number in the
subject line and it will get dropped into my claim.


Audra Dyckman
Help Point Claim Services by Farmers
National Liability Claims
direct dial 203-701-5316
888-244-6163 x 25316


From:   Robert Wallerius <robertwallerius@prodigy.net>
To:   audra.dyckman@21st.com
Cc:   EsquireJason Egan <Jason.H.Egan@usdoj.gov>
Date:   09/20/2010 03:57 PM
Subject:   Re: Fw: YOUR CLAIM #0500212826



Thank you for everything.  I will complete the form and get back to you late this week.  I need information about
old providers and it is locked in a cabinet stored in a POD in Franklin, NJ. Getting you the tax returns now.  In
your reply, you neglected to mention the amount of benefits payable under the policy.  Just trying to get an idea
because it will be helpful for my plan of reorganization.  OI need to know potential amount calculation and time
frame for disbursement.  Thank you for the heads up on the PI case possibly frozen.  Notice of the stay was provided
to Mr. Randolph but i have no idea if he notified the court.

Thank you again for your clarity and assistance.

Bob Wallerius

10-40401-LMK
850.692.3744

--- On Mon, 9/20/10, audra.dyckman@21st.com <audra.dyckman@21st.com> wrote:

From: audra.dyckman@21st.com <audra.dyckman@21st.com>
Subject: Fw: YOUR CLAIM #0500212826
To: robertwallerius@prodigy.net
Date: Monday, September 20, 2010, 3:48 PM

I do not have access to PACER, sorry I cannot help you on that one.  Thank
you for the clarification on Mr. Egan's role.

You may want to check with Mr. Egan, but it is my understanding that until
your bankruptcy is concluded, your PI case pending in NY County will be
stayed, meaning no discovery can take place and no depositions, no
examinations, no trial.   I have a file on my desk that had been stayed
for for 6 years due to one of the co-defendant corporations being in
bankruptcy.

I've also attached a medical authorization for you to sign and if possible
provide me with a list of all medical providers.
  (See attached file: medical authorization1.doc)

Audra Dyckman
Help Point Claim Services by Farmers
National Liability Claims
direct dial 203-701-5316
888-244-6163 x 25316
------ Forwarded by Audra M Dyckman/21st/Farmers/USA/Zurich on 09/20/2010
03:31 PM ------

From:    Robert Wallerius <robertwallerius@prodigy.net>
To:      audra.dyckman@21st.com
Cc:      EsquireJason Egan <Jason.H.Egan@usdoj.gov>
Date:    09/20/2010 03:23 PM
Subject:    Re: YOUR CLAIM #0500212826

Good afternoon insurance Angel of explanations.  You did a great job explaining and I thank you.  I am
scheduled
 for
 what I hope to be the final major surgery this Friday.  I will be recovering through 10/15 God willing.  The
recent

past years have been a living nightmare.  I woke up to my utilities turned off, a monthly occurrence trying to

support myself with only SSA-DI of $1,743.00.  The real estate taxes alone on my two homes (almost lost) are more

than $1,743.00. Well, I have something to look forward to post-recovery, financial settlement of this unfortunate

five years.  I had $3 million in assets at the time of the accident.  Now, I am broke.  All gone over income lost.

While down from the accident and on morphine, a trusted friend I appointed Trustee in my incapacity, stole my life

savings of $2 million.  The matter was brought to NJ Ocean County court and is still an active but hibernating

because i am unable to pay and attorney to get the money back and jail the little devil.

Because of the level of information you are providing me about my NY PI case, maybe you could help with PACER.  I

have access to PACER and can not seem to figure out how to logon to the case in NY County.  Could you help?  If i

could view the case online, I could not feel so underprivileged.

Can you email me the correct medical authorization form?  There is probable 15 to 20 providers.  I do not want to
be
responsible for holding up anything.

I am sending my tax returns asap in a separate email.  The file size may be large.  If i can find any old emails

sent to anyone whereby the returns are attached, I will forward them to you to save time scanning or faxing.

Please
be on the lookout.  Would you be so kind as to tell me the limits of coverage and period covered?  I have boxes
full
of medical records, including initial paid claim by AIG, pro bono services of friendly and sympathetic doctors

trying to ease my agony, State of FL DOE vocational rehab info during time I was insured and finally, Medicare from

1/1/2009 forward to current.  My pharmacy bill is a litany of pain medications, anti-depressants, anti-anxiety,

blood pressure ever rising from the level of constant pain and agony.


My Chapter 11 is alive and scheduled for me to present my Plan of Reorganization and Disclosure on or before

10/15/2010.


Do you have contact information for Kim Wurtz and who she represents?  Please understand, in order to keep the pain

from me going out of my mind, I was on morphine based drugs for years and it a complete fog.  The name Kim Wurtz

rings a bell but i better contact her and understand EVERYTHING so I can straighten this mess out and get my life

back on track.


Jason Eagan Esq is the attorney at the US Trustee's office in Tallahassee assigned to my case# 10-40401-LMK.  Mr.

Egan is a gentleman and it is my duty to keep him in the loop as to the individual estate matters progress I achieve
while under US bankruptcy stay and beyond until I have repaid all creditors agreed amounts in my plan.


As to Jeffrey Randolph, NY PI attorney status, he is not yet recognized by the US Bankruptcy court.  Mr. Randolph

and I had a falling our because he did not keep me as informed as would liked to have been.  I am attaching a
signed
withdrawal of Mr. Randolph not yet filed with the court.  I need to successfully conclude my NY PI case asap.


Because of poor communications between my attorney and I, the case is a mess I am sorting through.  I am an

experienced business executive for many years and I am quickly getting to the bottom of the facts.  Mr. Randolph
may
still represent me if it is determined the only option to not defaulting on the opportunity to recover.  Under my

Chapter 11, no attorney interviewed to replace Randolph will take the case.  I have a lot to sort through between

now and Thursday when i close the book of work until I am able to sit at my computer again.

Please let me know if I may be of further assistance. Thank you so much for your prompt and courteous professional

service.

Bob Wallerius

10-40401-LMK

Debtor Pro Se

850.692.3744


--- On Fri, 9/17/10, audra.dyckman@21st.com <audra.dyckman@21st.com> wrote:

From: audra.dyckman@21st.com <audra.dyckman@21st.com>

Subject: Re: YOUR CLAIM #0500212826

To: robertwallerius@prodigy.net

Cc: documentmanagementcenter@exchange.21st.com

Date: Friday, September 17, 2010, 3:25 PM


The income replacement coverage under your PIP is a separate and distinct

coverage from the Underinsured Motorist. Underinsured Motorist coverage

steps into the shoes of the at fault driver when the at fault driver's

insurance coverage is insufficient to compensate an insured for his

injuries. With respect to your personal injury claim against the cab

company, your policy does not afford any coverage for same. HOWEVER, it is

my understanding that the cab company filed a claim against you for the

damages to the cab itself. I believe that portion of the claim was

referred to Kim Wurtz to look into. Since you were in a Hertz vehicle,

they may in fact provide an attorney to DEFEND you. Neither this nor

Hertz's policy would provide an attorney to represent you as a plaintiff.

With respect to your pro-se status, you should be aware that your attorney

has never withdrawn his representation and he still shows as the attorney

of record on the NY judicial web page.   If he has, in fact, withdrawn his

representation, I believe he has to notify the court as well.   I'm not

sure about NY, but in CT, I know this necessitates a hearing.  You would

also need to notify the court that you are representing yourself.  While I

cannot advise you at all with respect to the pro's and con's of

representation, you should probably consider the fact that various court

appearances are necessary for all parties (usually it is the attorneys who

go, but if you are pro-se you would have to attend) and obviously you would

have geographic considerations.

Please confirm the status of your bankruptcy and identify who Jason Eagan

is with respect to this claim, as I note that he is cc'd on all of your

correspondence.

Audra Dyckman

Help Point Claim Services by Farmers

National Liability Claims

direct dial 203-701-5316

888-244-6163 x 25316

From:   Robert Wallerius <robertwallerius@prodigy.net>

To:   audra.dyckman@21st.com

Cc:   EsquireJason Egan <Jason.H.Egan@usdoj.gov>

Date:   09/17/2010 02:24 PM

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

─────────────────────────────────

**ROBERT CHARLES WALLERIUS and**
**KATHLEEN WALLERIUS,**

Plaintiff(s),

- against -

**KNAIBO BRIGGS and ACGSA TRANSIT, INC.,**

Defendant(s).



─────────────────────────────────

**INDEX NO.:**
*PLAINTIFF DESIGNATES:*
NEW YORK

*THE BASIS OF THE*
*VENUE IS:*
ACCIDENT LOCATION

**SUMMONS**

Accident occurred at:
Cross Bronx Expressway
at Exit 181 into the
Henry Hudson Parkway
New York, New York

**COUNTY OF:**
NEW YORK

TO THE ABOVE NAMED DEFENDANT(S)

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:    New York, New York

**LABADY & RANDOLPH, L.L.C.**
**JEFFREY B. RANDOLPH, ESQ.**
Attorney for Plaintiffs
c/o Magnani, Caruso & Dutton
138 West 25th Street
New York, New York 10001
(201) 505-1733
Our File No.: 05-A-03996

1

Defendants' Addresses:

Knaibo Briggs
1 Marshall Street
Irvington, New Jersey 07111

ACGSA Transit, Inc.
24-29 Jackson Avenue
Long Island City, New York 11101

auto/03996/summons1.def

NEW YORK
COUNTY CLERK'S OFFICE

MAR 1 3 2008

NOT COMPARED
WITH COPY FILED

2

# COMPLETE
# THIS STUB

Endorse This INDEX NUMBER ON All
Papers and advise your adversary of
the number assigned. Sec. 202.5,
Uniform Rules Of Trial Courts

**DO NOT DETACH**

Title of Action or Proceeding to be TYPED or PRINTED by applicant
**SUPREME COURT, NEW YORK COUNTY**

**INDEX NUMBER FEE
$210.00**

Robert Charles Walbrus et al

v.

Kwabo Brigg et al

08103776

```
            RECEIPT
     NEW YORK COUNTY CLERK
        60 CENTRE STREET
       NEW YORK, NY 10007
            R141


   DEPARTMENT              AMOUNT
   ----------------------------------
    1 GEN                  165.00
    7 SURCHARGE             45.00

   TOTAL        210.00
   CHECK                   210.00

   ----------------------------------
   CONS  CASHIER   DATE    TIME   TERM
   23697 1235    08 MAR 13 12:11 PM 41-1
```

## COUNTY CLERK, NEW YORK COUNTY

**INDEX NUMBER**

Application for INDEX NUMBER pursuant to Section 8018, C.P.L.R.

### FEE $210.00

_____

Space below to be TYPED or PRINTED by applicant

## TITLE OF ACTION OR PROCEEDING:

Robert Charles Wallerius and Kathleen Wallerius,

Plaintiffs(s),

- against -

Knaibo Briggs and ACGSA Transit, Inc.,

Defendant(s).

### CHECK ONE:

[X] Commercial Action  [ ] Not Commercial Action

[ ] Consumer Credit Transaction  [ ] Not Consumer Credit Transaction

[ ] Third Party Action  [ ] Not Third Party Action

**IF THIRD PARTY ACTION MAIN INDEX NO.**_____

**Name and address of Attorney for Plaintiff(s) or Petitioner(s). Telephone No.**

Jeffrey B. Randolph, Esq., Labady & Randolph, L.L.C.
c/o Magnani, Caruso & Dutton, 138 West 25th Street
New York, New York 10001
Reply to NJ Number: (201) 505-1733

**Name and address of Attorney for Defendant(s) or Respondent(s). Telephone No.**

**A.** **Nature and object of action or Nature of special proceeding:**  Filing Summons and Complaint in Motor Vehicle Action

**B.** **Application for Index Number filed by:**  Plaintiff [ X ]   Defendant [ ]

**C.** **Was a previous Third Party Action filed:**  Yes [ ]   No [ ]

**Date filed** _____

## COMPLETE
## THIS STUB

## INDEX NUMBER FEE
## $210.00

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY NEW YORK

---

ROBERT CHARLES WALLERIUS and
KATHLEEN WALLERIUS,

                    **Plaintiff(s),**

   - against -

KNAIBO BRIGGS and ACGSA TRANSIT, INC.,

                  **Defendant(s).**

**VERIFIED COMPLAINT**

     **Index No.:**

NEW YORK
COUNTY CLERK'S OFFICE

MAR 1 3 2008

---

Plaintiffs, by their attorney, **LABADY & RANDOLPH, L.L.C.**, as and for their

Verified Complaint against the Defendants herein, state and allege as follows:

    1.     The Plaintiffs, **ROBERT CHARLES WALLERIUS** and **KATHLEEN**

**WALLERIUS**, were and still are at all times hereinafter mentioned, residents of the

County of Bergen, State of New Jersey.

    2.     Upon information and belief, at all times hereinafter mentioned, the

Defendant, **KNAIBO BRIGGS**, is and still is a resident of the County of Essex, State

of New Jersey.

    3.     Upon information and belief, at all times hereinafter mentioned, the

Defendant, **ACGSA TRANSIT, INC.**, has and still has a place of business at 24-29

Jackson Avenue, Long Island City in the Borough of Queens, State of New York.

    4.     At all times hereinafter mentioned, the Plaintiff, **ROBERT CHARLES**

**WALLERIUS**, was the operator and owner of a 2005 Ford 4 Door Sedan, bearing

1

New Jersey License Plate Number SFX B1M.

5.      Upon information and belief, at all times hereinafter mentioned, the Defendant, **KNAIBO BRIGGS**, was the operator of a 2004 Ford 4 Door Sedan, bearing a New York License Plate Number 3K70B.

6.      Upon information and belief, at all times hereinafter mentioned, the Defendant, **ACGSA TRANSIT, INC.**, was the owner of a 2004 Ford 4 Door Sedan, bearing a New York License Plate Number 3K70B.

7.      At all times hereinafter mentioned, the Cross Bronx Expressway at or near Exit 181 to the Henry Hudson Parkway in the County of New York, State of New York, were and still are, public highways and/or roadways and much traveled roads in the County of New York and State of New York.

8.      On or about the 17th day of March, 2005, while the Plaintiff, **ROBERT CHARLES WALLERIUS**, was operating his motor vehicle owned by Hertz Vehicles LLC westbound on the Cross Bronx Expressway attempting to merge into Exit 181 of the Henry Hudson Parkway on his way to the George Washington Bridge, County of New York, State of New York, without fault or negligence on the Plaintiff's part, but by reason of the negligence of the Defendant, **KNAIBO BRIGGS**, Defendant's motor vehicle was caused to contact and collide with Plaintiff's motor vehicle while the Defendant was attempting to move into Exit 181 of the Henry Hudson Parkway.

9.      Solely by reason of the Defendant's negligence, his motor vehicle collided with the rear of the Plaintiff's motor vehicle, causing the Plaintiff to sustain serious and permanent injuries and resulting damages.

2

The Negligence of the Defendant consisted among other things in:

a.    In operating his motor vehicle at a high, excessive, unsafe and dangerous rate of speed;

b.    In failing to have said vehicle under control at said time and place;

c.    In not looking in the direction in which the said vehicle were proceeding and not keeping a proper look-out for other users of the road;

d.    In violating the laws, rules, statutes and regulations of the state and local municipalities;

e.    In failing to use reasonable care and diligence;

f.    In failing to lessen the speed of his motor vehicle and observe at the place of contact;

g.    In failing to give any warning of his intention as to which side of the road he was were going to take;

h.    In causing his motor vehicle to collide with the Plaintiff's motor vehicle;

i.    In failing to reasonably stop, slow down and/or suddenly stop prior to said collision;

j.    In traveling near the motor vehicle which the Plaintiff was operating more closely than was reasonable, without due regard for the speed of such motor vehicle and the traffic upon the condition of the highway;

k.    In not driving his motor vehicle at a sufficient distance from the car  which the Plaintiff was operating, so as to stop in a clear space between the

3

cars;

l.       In failing to see whether there was adequate time and space in which to continue on the road with safety;

m.      In failing to adequately sound any horn or any other signal to warn other users of the highway of his approach;

n.      In failing to keep watch ahead of him as he operated his motor vehicle along the road at said time and place;

o.      In not properly proceeding and/or entering the road without due regard to the traffic conditions at the time of the accident;

p.      In failing to observe the Plaintiff's motor vehicle and respecting the right of way of the automobile which the Plaintiff operating; and

q.      In being otherwise negligent.

## AS AND FOR A FIRST CAUSE OF ACTION

10.     As a result of the foregoing, the Plaintiff, **ROBERT CHARLES WALLERIUS**, suffered serious injuries as defined in Article 51 of the Insurance Law of the State of New York.

11.     By reason thereof, the Plaintiff, **ROBERT CHARLES WALLERIUS**, is entitled to recover for non-economic losses as are not included within the definition of "basic economic loss" as set forth in Article 51 of the Insurance Law of the State of New York.

12.     The Plaintiff, **ROBERT CHARLES WALLERIUS**, is a "covered person" as defined by Article 51 of the Insurance Law of the State of New York.

13.   Solely by reason of the foregoing and without fault on his part, the Plaintiff, **ROBERT CHARLES WALLERIUS**, was made sick, sore, lame and disabled; his nervous system was shocked and injured; he sustained various severe and painful injuries; suffered, and still suffer and will continue to suffer as a result thereof; was compelled to expend various sums of money for medicine, medical aid and attendance, was compelled to refrain from working at his usual occupation with resultant loss of earnings and was otherwise damaged in the sum of up to TWO MILLION ($2,000,000.00) DOLLARS for the Plaintiff.

14.   As a result of the foregoing, the Plaintiff, **ROBERT CHARLES WALLERIUS**, has been damaged in the sum of up to TWO MILLION ($2,000.000.00) DOLLARS, together with cost and disbursements of these actions.

## AS AND FOR A SECOND CAUSE OF ACTION

15.   At all times hereinafter mentioned, the Plaintiff, **KATHLEEN WALLERIUS**, was married to the Plaintiff, **ROBERT CHARLES WALLERIUS**.

16.   At all times hereinafter mentioned, the Plaintiff, **KATHLEEN WALLERIUS**, was entitled to the love, companionship, society and services of her spouse, the Plaintiff, **ROBERT CHARLES WALLERIUS**.

17.   By reason of the foregoing, the Plaintiff, **KATHLEEN WALLERIUS**, has been deprived of the love, companionship, society and services of her spouse, the Plaintiff, **ROBERT CHARLES WALLERIUS**, and has been caused to suffered mental anguish, depression and psychic injuries.

18.   As a result of the foregoing, the Plaintiff, **KATHLEEN WALLERIUS**,

has been damaged in the sum of up to TWO HUNDRED FIFTY ($250,000.00)

DOLLARS, together with cost and disbursements of these actions.

    **WHEREFORE**, the Plaintiffs, **ROBERT CHARLES WALLERIUS** and

**KATHLEEN WALLERIUS**, demand judgment against the Defendants, **KNAIBO**

**BRIGGS** and **ACGSA TRANSIT, INC.**, in the **First Cause of Action** in the sum of

up to TWO MILLION ($2,000,000.00) DOLLARS; and in the **Second Cause of**

**Action** in the sum of up to TWO HUNDRED FIFTY ($250,000.00) DOLLARS;

together with costs, disbursements and interest of these actions.

Dated:  2/26/08

 

**LABADY & RANDOLPH, L.L.C.**
**JEFFREY B. RANDOLPH, ESQ.**
Attorney for Plaintiffs
c/o Magnani, Caruso & Dutton
138 West 25th Street
New York, New York 10001
(201) 505-1733
Our File No.: 05-A-03996

auto/03996/cmplaint.org

6

Cc: documentmanagementcenter@exchange.21st.com

Date: Friday, September 17, 2010, 1:51 PM

Dear Mr. Wallerius,

Please be advised I have been reassigned the handling of your potential

Underinsured Motorist claim.   It is my understanding that the liability

claim arising out of this auto accident is currently the subject of

litigation in New York County and that you represent your self in that

action.  It is my understanding from the documents in the file that this

matter may be stayed due to your Chapter 11 bankruptcy.  Your claim for

Underinsured Motorist benefits is only perfected upon exhaustion of

Hereford Insurance's liability limits.  Nevertheless, based on the severity

of the injuries you describe, it is important for us to monitor both your

recovery and the status of the claim at Hereford.  In order to do so, I

will need you to sign an medical authorization  and provide me with a list

of all of your medical providers.  With respect to your wage claim, I will

need copies of your tax returns for the three years preceeding this loss

and all years subsequent, including all w2 forms, schedules, etc.   At your

Re: Fw: YOUR CLAIM #0500212826 - Yahoo! Mail                    Page 7 of 9

Case 10-40401-LMK    Doc 75    Filed 10/15/10    Page 42 of 60

Subject:    Re: YOUR CLAIM #0500212826

Thank you Audra.  Please email me any forms to be signed with return instructions.  i can email scan or fax.

Should

you wish to fax me information, my fax is: 850.692.3740

Could you send me basic information about the income replacement and underinsured coverage? I am a neophyte when
it

comes to auto insurance.  If i require legal counsel for the NY PI suit, is there any coverage under my policy?
I

am not Pro Se by choosing.  Thank you so very much.

Bob Wallerius

Pro Se 10-40401-LMK

10-40401-LMK

--- On Fri, 9/17/10, audra.dyckman@21st.com <audra.dyckman@21st.com> wrote:

From: audra.dyckman@21st.com <audra.dyckman@21st.com>

Subject: YOUR CLAIM #0500212826

To: robertwallerius@prodigy.net

convenience please contact me at (203) 701-5316.

Audra Dyckman

Help Point Claim Services by Farmers

National Liability Claims

direct dial 203-701-5316

888-244-6163 x 25316

(See attached file: 4.27.2010 Bankruptcy Stay0001.pdf)

# The Law Office of Jeffrey Randolph, LLC

| † Admitted in NJ & NY | Δ Admitted in U.S. Court of Appeals -Third Circuit | ◊ Admitted in U.S. Court of Federal Claims |
|---|---|---|
| New Jersey Office:<br>139 Harristown Road, Suite 101<br>Glen Rock, NJ 07452 | Tel. (201) 444-1645<br>Fax (201) 444-1787 | New York Office:<br>138 West 25th St.<br>New York NY 10038<br>(Reply to NJ Office) |

**Jeffrey Randolph, Esq. ◊Δ†**

## SECOND REQUEST

October 6, 2010

**VIA UNITED PARCEL SERVICE**

Robert Wallerius
3084 McCord Blvd.
Tallahassee, Florida 32303

Re:   <u>Wallerius, et al. v. Briggs, et al.</u>
      Index No.: 0103776-2008
      Our File No.: 05-A-03996

Dear Mr. Wallerius:

As you have informed this law firm that you no longer wish us to represent you with regard to the above-captioned matter, in correspondence to you dated September 8, 2010 and delivered to you via UPS on September 9, 2010, we forwarded to your attention a Substitution of Attorney.

We asked you to sign where indicated and then return same to us **immediately** in the self-addressed, stamped envelope provided.

To date, you have not returned this document.

Although this legal matter has been stayed due to your bankruptcy, as you can see by the enclosed correspondence, the Court has scheduled a Status Conference for December 17, 2010 at 9:30 A.M. that either you or your new counsel must attend.

**Thank you for your immediate attention to the return of the signed substitution.**

Very truly yours,

JEFFREY B. RANDOLPH

JBR/sma
Enclosure
auto/03996/clientltr.10.06.10

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS

CASE NO. 10- 40401-LMK

Debtor.

Chapter 11

_____/

**DEBTOR'S EXHIBITS SUPPORTING
PLAN OF REORGANIZATION & DISCLOSURE STATEMENT**

**STAFFORD REAL ESTATE TRUST**



**(no subject)**

Tuesday, July 13, 2010 11:29 AM

**From:** "RCerchio@aol.com" <RCerchio@aol.com>
**To:** robertwallerius@prodigy.net

Bob

It is possible to help Stone with primary financing and this can be accomplished rather quickly and we can get the project on track again.

However, in order for this to happen we need to clear the title of items related to you and Paul Schumacher which have been hanging out there for a long time.

1)   Zone Telecom v. Robert Wallerius

2)   John Rozsa v. Robert Wallerius

3)   State of NJ v. Paul Schumacher

You have previously provided copies of satisfactions of judgment for items 1 & 2. We simply need to record the originals

Perhaps you can also help in clearing the Schumacher issue as I have no idea how to contact him. We need satisfaction on his tax judgement.

Please let me know today what you are going to do about these.

Thank you!

Mike



**Re: Moran ads. Wallerius**                                      Tuesday, July 6, 2010 9:58 AM

**From:** "johndevincens@comcast.net" <johndevincens@comcast.net>
**To:** robertwallerius@prodigy.net
    1 File (35KB)



2010_07...

Dear Mr. Wallerius:

Per your request attached is my trust account report.
John J. DeVincens, Esq.

----- Original Message -----
From: "Robert Wallerius" <robertwallerius@prodigy.net>
To: JohnDeVincens@comcast.net, RCERCHIO@aol.com
Cc: "EsquireJason Egan" <Jason.H.Egan@usdoj.gov>
Sent: Saturday, July 3, 2010 7:15:21 PM GMT -05:00 US/Canada Eastern
Subject: Fw: Re: Moran ads. Wallerius

Gentlemen, it has been a reasonable time to get a response. I have heard nothing from
either of you. I would appreciate an update at your earliest convenience. Please be sure to
address every question with an answer. I am anxious to hear from you to know what path I
need to take to collect monies due me. I have not received any updates from Michael Moran
Trustee in many years. There are millions of dollars here at stake and i need to inform the
bankruptcy court as to the status of the estate asset and take any necessary action to
protect the value.

Thank you for your hopeful kind courtesies.

Bob Wallerius
10-40401-LMK

--- On **Wed, 6/23/10, Robert Wallerius <*robertwallerius@prodigy.net*>** wrote:

From: Robert Wallerius <robertwallerius@prodigy.net>
Subject: Re: Moran ads. Wallerius
To: Cc: "EsquireJason Egan" <Jason.H.Egan@usdoj.gov>
Date: Wednesday, June 23, 2010, 1:14 PM

Good afternoon John DeVincens and Michael Moran. Attached is a request for information enabling me to form my plan of bankruptcy reorganization. Your prompt and full attention to the various items will be deeply appreciated. My contact information is on the letterhead.

Bob Wallerius

--- On **Wed, 4/18/07, JohnDeVincens@comcast.net** *<JohnDeVincens@comcast.net>* wrote:

> From: JohnDeVincens@comcast.net <JohnDeVincens@comcast.net>
> Subject: Moran ads. Wallerius
> To: "Robert Wallerius" <Robertwallerius@prodigy.net>, "James Norton" <ChairmanRMG@aol.com>, "Mike Moran" <RCERCHIO@aol.com>, "John Mensching" <OGB1314@aol.com>, "Lynne Dunn" <LDunn@hdslaw.net>
> Date: Wednesday, April 18, 2007, 1:18 PM
>
> Enclosed please find Defendant's Brief in opposition to Plaintiff's Motion for Partial Summary Judgment. Please note this Brief is also being forward to you via overnight mail, as I am not able to annex the exhibits referred to in the Brief.
>
> Thank you.
>
> JOHN J. DeVINCENS

## Transaction - ETD
### 11/25/1998 through 6/23/2010

| Date | Account | Num | Description | Memo | Category | Clr | Amount |
|---|---|---|---|---|---|---|---|
| 7/28/2004 | D&A | ... | | Moran adv. Wolarius | Moran:Staffo... | R | 79,150.00 |
| 11/17/2004 | D&A | | | Moran v Wallerius | Moran:Staffo... | R | 80,900.00 |
| 12/7/2004 | D&A | 5076 | **VOID**Superior Court Clerk | Moran adv. Wallerius | Moran:Waler... | R | 0.00 |
| 2/15/2005 | D&A | | | Moran v. Wallerius | Moran:Waler... | R | 815.05 |
| 2/22/2005 | D&A | 5248 | Jersey Shore Reporting, LLC | Moran v. Wallerius | Moran:Waler... | R | -815.05 |
| 12/5/2005 | D&A | 6350 | E. Steven Lustig, Esq., Trus... | Moran adv. Wallerius | Moran:Staffo... | R | -74,277.50 |
| 12/5/2005 | D&A | 6418 | **VOID**Michael Moran | Moran adv. Wallerius | Moran:Staffo... | R | 0.00 |
| 12/21/2005 | D&A | 6394 | DeVincens & Associates | Moran adv. Walerius | Moran:Staffo... | R | -24,000.00 |
| 3/15/2006 | D&A | 6673 | Michael Moran | Moran adv. Wallerius | Moran:Staffo... | R | -36,772.50 |
| 11/14/2006 | D&A | 7200 | Rothstein, Mandell, Strohm ... | Moran ads. Wallerius | Moran:Staffo... | R | -597.99 |
| 7/3/2008 | D&A | 8328 | Rothstein, Mandell, Strohm ... | Moran/Wallerius | Moran:Staffo... | R | -595.00 |
| 8/21/2009 | D&A | 9076 | Resource Management Gro... | Moran Adv. Wallerius | Moran:Staffo... | R | -23,807.01 |
| 11/25/1998 - 6/23/2010 | | | | | | | 0.00 |

|  |  |
|---|---|
| TOTAL INFLOWS | 160,865.05 |
| TOTAL OUTFLOWS | -160,865.05 |
| NET TOTAL | 0.00 |



# DeVincens & Associates, LLC

ATTORNEYS AT LAW

TEL: 732.914.8700    FAX: 732.505.0230

John J. DeVincens
Douglas M. DeVincens
Member NJ & FL Bar

July 13, 2007

Robert C. Wallerius
3084 McCord Blvd.
Tallahassee, FL  32303

Re:    **Moran, et al adv. Wallerius**

Dear Mr. Wallerius:

As it relates to the above matter I enclose a copy of the recorded Extension of Mortgage which is dated as of March 23, 2007.  This document was recorded on June 25, 2007 in the Ocean County Clerk's Office OR Book 13686 at page 1478.

I am providing this to you at the request of Michael R. Moran, Trustee.

If you have any questions, please contact me.

Very truly yours,

JOHN J. DeVINCENS

JJD/kg
Enclosure
cc:    Michael R. Moran, Trustee

611 Main Street Second Floor ~ Toms River New Jersey 08753

# NOTE AND MORTGAGE MODIFICATION AND EXTENSION AGREEMENTS

This Note and Mortgage Modification and Extension (hereinafter the "Agreement") is dated as of March 23, 2007, and is entered into by and among R. STONE AND CO., a New Jersey Corporation, referred to herein as the "Borrower", ROBERT E. STONE, JR. referred to herein as the "Guarantor" and jointly referred to as the "Mortgagor", and THE STAFFORD REAL ESTATE TRUST, by Michael R. Moran, Trustee, referred to herein as the "Mortgagee".

## RECITALS:

WHEREAS, Robert E. Stone, Jr. is the majority shareholder in R. Stone and Co., a New Jersey Corporation; and

WHEREAS, Borrower is the owner in fee of property known and designated as: Block 51, Lot 29, Stafford Township and further described as shown on Preliminary and Final Major Subdivision, Stone Hill Estates, Block 51, Lot 29, Stafford Township, Ocean County, New Jersey, prepared by Owen, Little & Associates, Inc., Professional Engineer and Professional Planner, dated December 22, 2004, (hereinafter referred to as the "Mortgaged Premises"); and

WHEREAS, on December 31, 2003, Borrower made and delivered to Mortgagee a Promissory Note (hereinafter "Note" or "Loan"), whereby Borrower promised to pay the sum of $1,439,000.00 together with interest as set forth in the Note. Principal payments of $71,950.00 each were due on July 1, 2004 and September 1, 2004 and were paid by Borrower received by Lender. Interest on the principal balance of $1,295,000.00 sleeps and accrues at the rate of $100.00 per day from May 10, 2004 to September 10, 2004 and thereafter at the rate of nine percent (9%) per annum on the unpaid balance; and

WHEREAS, to secure payment of the aforementioned obligation, Borrower executed to Mortgagee a Mortgage of even date with the Note and thereby granted to the Mortgagee a first security interest in and lien on the Mortgaged Premises. Said Mortgage was duly recorded on April 5, 2004 in the Ocean County Clerk's Office in Book 12001 at Page 0584; and

WHEREAS, an Extension of Mortgage was recorded on July 31, 2006 in the Ocean County Clerk's Office in Book 13273, Page 1299 making October 30, 2006 the extended maturity date; and

WHEREAS, in order to induce Mortgagor to make the Loan, Robert E. Stone, Jr. unconditionally and absolutely guaranteed the unpaid and accrued interest on the Note, but not the principal, by executing a Guaranty of even date with the Note and Mortgage; and

WHEREAS, Borrower has obtained Final Major Subdivision approval of the Mortgaged Premises into eighteen (18) single family building lots, one (1) detention

INSTR # 2007087243 OR BK 13686 PG 1478 06/25/2007 09:11:19 AM CARL W. BLOCK COUNTY CLERK, OCEAN COUNTY NEW JERSEY

(10) 130- Chg 389
Carluccio

basin lot and one (1) irregular lot, fronting on Route 9 by Resolution #2005-18 dated March 16, 2005; and

WHEREAS, The Note and Mortgage matured on June 30, 2006 and pursuant to the Extension of Mortgage was extended to October 30, 2006; and

WHEREAS, as of the date hereof Borrower has been unable and has not made payment at maturity; and

WHEREAS, Borrower has offered to reconvey the Mortgaged Premises in exchange for cancellation of the debt, but Mortgagee has declined such offer. However, the fact that the Mortgagee declined to accept an offer from the Borrower to re-convey the Mortgaged Premises in exchange for cancellation of the debt does not, in the future preclude the Mortgagee from accepting such offer from the Borrower; and

WHEREAS, Mortgagee is willing to extend and modify the maturity date and certain terms and conditions of the Note and Mortgage for a period of time as hereinafter set forth, provided that Borrower and Guarantor comply with the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## SECTION 1. DEFINITIONS

1.1    All capitalized terms used herein (including in the introductory paragraph and recitals set forth above) and not otherwise defined shall have the meanings assigned to such terms in the Note, Mortgage and Guaranty.

1.2    The following terms used in this Agreement shall have the meanings set forth below:

"Effective Date" means the date the last party signs this Agreement.

"Default" means (a) the occurrence of any Default or Event of Default other than the present maturity date of the Note and Mortgage; (b) the failure of Borrower or Guarantor to comply with any term, condition or covenant set forth in this Agreement, (c) any representation made by Borrower or Guarantor under or in connection with this Agreement shall prove to be materially false or misleading as of the date when made or (d) the filing of any petition (voluntarily or involuntarily) under the insolvency or bankruptcy laws of the United States or any state thereof, or of any foreign jurisdiction, with respect to Borrower or Guarantor.

"Loan Documents" means the Note, the Mortgage and the Personal Guaranty all dated December 31, 2003.

"Obligations" means the Note, Mortgage and Guaranty and any duty imposed thereby and by this Agreement on the Borrower and Guarantor.

"Termination Date" means the earlier to occur of (a) 5:00 p.m. Eastern Standard Time on March 15, 2008, further extended to March 15, 2010 if Borrower begins repayment monthly of the unpaid principal balance together with any unpaid and accrued interest based on a twenty (20) year amortization schedule with interest at nine percent (9%) per annum for a term of two (2) years, ending March 15, 2010 at which time the unpaid principal balance plus accrued interest shall be due and payable.

## SECTION 2. CONFIRMATION BY BORROWERS OF OBLIGATIONS

2.1    Borrower and Guarantor acknowledge and reaffirm the Obligations and their liability for repayment thereof and further acknowledge and agree that as of the date hereof, neither the Borrower nor Guarantor have any have any right of offset, defense or counterclaim with respect to the Obligations. Borrower and Guarantor acknowledge that, as of the date hereof, the principal balance outstanding under the Note is $1,295,000.00 and accrued and unpaid interest in the amount of $253,875.08 (from September 10, 2004 to November 14, 2006) as of November 14, 2006 and thereafter interest at the rate of 3.5% per annum on the unpaid principal balance until March 15, 2008.

2.2    Except to the extent explicitly modified by this Agreement, or by any document contemplated thereby, or executed pursuant to the provisions of this Agreement, all provisions of the Note and Mortgage shall remain in full force and effect in accordance with their original terms, including, without limitation, all representations, warranties, negative covenants, affirmative covenants, financial covenants, events of default waivers, and provisions dealing with choice of law, choice of forum and arbitration. Failure of the Borrower or Guarantor to comply with any material provision of this Agreement or any agreement, document or instrument contemplated hereby or executed in connection herewith shall constitute an Event of Default under the Note and Mortgage and this Agreement. Borrower and Guarantor represent and warrant that all representations and warranties set forth in the Note and Mortgage are true and correct as of the date hereof. Borrower and Guarantor further represent and warrant that, except for the maturity date of the Note and Mortgage, Borrower and Guarantor are in full compliance with all of the terms and provisions contained in the Note and Mortgage.

2.3    Guarantor acknowledges and reaffirms that under the Note, Guarantor is personally and individually liable for accrued and unpaid interest in the amount of $253,875.08 as of November 14, 2006. Guarantor now agrees by these presents in consideration of the extension of time, reduction of the interest rate from 9% to 3.5% for the period November 15, 2006 to March 15, 2008 and other valuable consideration, Guarantor shall be liable and hereby personally guarantees the principal balance of the Note and all interest accrued and accruing thereunder until paid in full.

## SECTION 3. AGREEMENT TO MODIFY AND EXTEND; SUBORDINATION AGREEMENT; OTHER AGREEMENTS

3.1    Provided that no Default occurs, Mortgagee hereby agrees to refrain through the Termination Date from exercising any of their rights and remedies under the Note, Mortgage and Guaranty by reason of the present maturity of the Note and Mortgage; provided, however, that in no event shall the foregoing be deemed to limit, modify, amend, waive or otherwise affect Mortgagee's rights and remedies that exist under the Note, Mortgage and Guaranty, all of which rights and remedies are hereby expressly reserved and which may be enforced by Mortgagee in accordance with their respective terms. If Borrower makes all payments required under Section 5.1 hereof in accordance with the terms of such Section, and Borrower complies with all other terms, covenants and conditions set forth in this Agreement and the Note, Mortgage and Guaranty, the Mortgagee agrees that the present maturity shall be deemed extended until the Termination Date.

3.2    Except as expressly provided herein, the execution and delivery of this Agreement shall not: (a) constitute a waiver of any aspect of the Note, Mortgage or Guaranty; (b) extend the terms of the Note, Mortgage or Guaranty, except as set forth in this Agreement; (c) give rise to any obligation on the part of Mortgagee to extend, modify or waive any term or condition of the Note, Mortgage or Guaranty, except as set forth in this Agreement; (d) give rise to any defenses or counterclaims to the right of Mortgagee to compel payment of the Note or to otherwise enforce its rights and remedies under the Note, Mortgage and Guaranty, except as set forth in this Agreement; or (e) establish a custom or course of dealing between or among the Borrower, the Mortgagee, or any of them. Except as expressly limited herein, Mortgagee hereby expressly reserves all of its rights and remedies under the Note, Mortgage and Guaranty and under applicable law. From and after the Termination Date, Mortgagee shall be entitled to enforce the Note, Mortgage, Guaranty and this Agreement.

3.3    The parties hereto hereby agree that, pursuant to and in accordance with the Note, on and after the date hereof, for so long as no Event of Default occurs including, but not limited to, any default of this Agreement, beginning November 15, 2006, the Note shall bear interest from November 15, 2006, thru March 15, 2008, at the rate of three and a half (3.5%) percent per annum; thereafter the Note will bear interest at the original rate of nine (9%) per cent per annum until paid. In accordance with the terms of the Note all interest will sleep and accrue, to be paid at the time of third (3rd) party closing of residential lots, in an amount determined by taking the sum of the principal ($1,295,000.00) plus accrued interest to November 14, 2006 ($253,875.08) plus accrued interest from November 15, 2006, to date of closing divided by eighteen (18) lots and then the result multiplied by one hundred twenty (120%) percent.    Example: $1,295,000.00 (principal) plus $253,875.08 (accrued interest to November 14, 2006) plus additional accrued interest to July 1, 2007 (assumed closing date) $28,064.68 (226 @ $124.18), divided by 18 equals $88,055.00 times 120% $105,666.00 (release amount). During the term of this Agreement, Mortgagee may, at it sole discretion, declare this Agreement in default if any payment is not made by the 5th of the month following the month in which that payment was due.

3.4     Notwithstanding the due date of June 30, 2006 and as extended under the Extension of Mortgage to October 30, 2006 under the Mortgage, Mortgagee and Obligee hereby agree to modify and extend the Note and Mortgage as follows:

(a)     The due date and maturity date of the Note and Mortgage, respectively, are extended to March 15, 2008 and further extended to March 15, 2010, provided Borrower commences monthly payments of the remaining principal balance as of March 15, 2008 plus all accrued and unpaid interest as of such date together with current interest at nine percent (9%) per annum on the unpaid principal balance, amortized on a 240 monthly payment schedule, until maturity, at which time the balance, if any, shall be due and payable. To the extent any releases are required during such amortization period, Mortgagee shall give credit for all payment of principal made toward such releases and shall give credit against future monthly payments for all release amounts, not credited for prior monthly payments.

(b)     From November 15, 2006 through and including March 15, 2008, Mortgagee/Obligee agrees and does hereby reduce and modify the interest rate to be charged under the Note from nine percent (9%) per annum to three and one-half percent (3.5%) and thereafter from March 15, 2008 any remaining principal balance shall revert to nine percent (9%) per annum until paid in full.

3.5     Paragraph 8 of the Note and Paragraph 11 of the Mortgage are hereby modified to delete the limitation of Borrower's obligation to its interest in the mortgaged premises and to limit Borrower's and Guarantor's liability to accrued and unpaid interest. Borrower and Guarantor accept for liability for the obligations, including principal and all accrued and unpaid interest.

3.6     Paragraph 13 of the Mortgage, Subordination Clause is hereby modified as follows:

Mortgagee/Obligee hereby deletes Paragraph 13 of the Mortgage and in place thereof agrees and does herein subordinate the lien of this Mortgage, hereinafter the "Junior Mortgage" as hereinbefore modified and extended, to the lien of a Mortgage by OceanFirst Bank, Toms River, NJ or any other federal or state-chartered bank or savings and loan institution having a home office in New Jersey, hereinafter the "Superior Mortgage". The Superior Mortgage shall secure the sum of $1,500,000.00 to be advance for the following expenditures:

(i)      Cash portion of improvement bond and premium for said bond
(ii)     Inspection fees escrow to Township of Stafford
(iii)    Development permit fees
(iv)     Site engineering fees
(v)      Sewer, water, gas and electric extension of service costs
(vi)     Site improvements within the right of way, drainage pipes and basins, site clearing and grading
(vii)    Other miscellaneous costs related to or arising from items (i) to (v).

Further the Superior Mortgage shall secure the sums of $250,000.00 for a model home and sales area and a home construction loan revolver of up to $800,000.00 for four (4) homes of $200,000.00 each.

The total amount of the Superior Loan shall not exceed $2,550,000.00 at any one time and shall not be for a term less than one (1) year or greater than three (3) years, at prevailing rates in the Ocean County area for land development and construction loans. The Superior Loan will contain a release clause which will permit the release of any lot for payment of not more than one hundred and twenty percent (120 %) of $1/18^{th}$ of $1,750,00.00 and 100% of all funds advanced for construction money plus unpaid interest. Guarantor will personally guarantee the Superior Mortgage Loan.

3.7     Paragraph 14 of the Mortgage is hereby deleted in its entirety.


## SECTION 4. REPRESENTATIONS AND WARRANTIES

In consideration of the agreement by Mortgagee to extend and modify the Note and Mortgage as set forth above, Borrower and Guarantor jointly and severally hereby represent and warrant to Mortgagee as of the date hereof as follows:

4.1     The execution, delivery and performance of this Agreement by Borrower and Guarantor hereto is within such person's individual and corporate power and has authorized by all necessary actions of the directors, shareholders, partners and individuals as applicable.

4.2     This Agreement constitutes a valid and legally binding Agreement enforceable against each Loan Party hereto in accordance with its terms.

4.3     All Loan Documents, including without limitation the Note, constitute valid and legally binding obligations of each Loan Party thereto, enforceable against such Loan Party.

## SECTION 5. COVENANTS

In order to induce Mortgagee to extend and modify the Note and Mortgage as set forth above, Borrower hereby covenants and agrees with Mortgagee as follows:

5.1     Borrower shall continue to perform and observe all terms and conditions contained in the Note, Mortgage and Guaranty.

5.2     Borrower agrees to actively market the Mortgaged Premises for immediate sale to a bona fide purchaser for fair market value sufficient to satisfy the obligation to Mortgagee and others and alternatively and not by way of limitation, Borrower will diligently pursue posting of development bond, obtain development permit and

constructing all site improvements, including utilities and thereafter constructing a model home and selling dwelling units until all lots are sold and Mortgagee paid. Failure to satisfy the obligations due Mortgagee by the Termination Date shall constitute a default under this Agreement and permit Mortgagee to pursue any and all remedies available to the Mortgagee under the law or in equity in accordance with the Note, Mortgage and Guaranty as extended and modified by this Agreement.

5.3    In the event that Borrower or Guarantor is the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceeding, federal or state, voluntary or involuntary, under any present or future law or act, Mortgagee is entitled to the automatic and absolute lifting of any automatic stay as the enforcement of its remedies under the Loan Documents against the Mortgaged Premises, including specifically, but not limited to the stay imposed by Section 362 of the United States Federal Bankruptcy Code, as amended; Borrower and Guarantor hereby consent to the immediate lifting of any such automatic stay, and will not contest any motion by Mortgagee to lift such stay; Borrower and Guarantor expressly acknowledge that (a) there is no equity in the collateral after consideration of the amounts owed Mortgagee and (b) the collateral is not now, and will never be necessary to any plan of reorganization of any type.

## SECTION 6 MISCELLANEOUS

6.1    Headings.    Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

6.2    Governing Law.    THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.

6.3    Counterparts.    This Agreement may be executed in any number of counterparts, and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

6.4    Continued Effectiveness.    Except as expressly set forth in this Agreement, the terms of the Note, Mortgage and Guaranty remain unchanged, and all such Loan Documents shall remain in full force and effect and are hereby confirmed and ratified.

6.5    No Novation.    This Agreement shall not be deemed or construed to be a satisfaction, reinstatement, novation or release of the Note, Mortgage or Guaranty except as expressly provided herein, a waiver by Mortgagee of any of its rights and remedies under the Note, Mortgage or Guaranty, or any of them, or at law or in equity.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first set forth above, by their respective duly authorized officers.

**MORTGAGEE:**

**The Stafford Real Estate Trust,**
**by Michael Moran, Trustee**

By: _____
Name: Michael Moran
Title: Trustee
Date: April 26, 2007

**BORROWER:**

**R. STONE AND CO., A New**
**Jersey Corporation**

By: _____
Name: Robert E. Stone, Jr.,
Title: President
Date: March 23, 2007

STATE OF NEW JERSEY :
COUNTY OF OCEAN     : SS:

I CERTIFY that on March 23 , 2007,
Robert E. Stone, Jr.   personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):

    (a)  this person is the PRESIDENT of the R. STONE AND CO., the entity named herein and personally signed this document;

    (b)  this person has the authority to sign this document; and

    (c)  signed, sealed and delivered this document as his or her act and deed.

_Kelly Gancarz_
KELLY GANCARZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires July 20, 2(

STATE OF NEW JERSEY :
COUNTY OF OCEAN     : SS:

I CERTIFY that on ~~March~~ *April* 26 , 2007,
Michael Moran       personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):

(a)   this person is the TRUSTEE of the THE STAFFORD REAL ESTATE TRUST, BY MICHAEL MORAN, TRUSTEE, the entity named herein and personally signed this document;

(b)  this person has the authority to sign this document; and

(c)  signed, sealed and delivered this document as his or her act and deed.

GLENN HART
MY COMMISSION # DD597168
EXPIRES: Aug. 21, 2010
(407) 398-0153    Florida Notary Service.com

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first set forth above, by their respective duly authorized officers.

BORROWER:

R. STONE AND CO., a New Jersey Corporation

By: _____

Name:  Robert E. Stone, Jr.

Title:  Presient

Date:  May 30, 2007

STATE OF NEW JERSEY:

COUNTY OF OCEAN      : SS.

I CERTIFY that on May 30, 2007,

Robert E. Stone, Jr., personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):

    (a) this person is the PRESIDENT of the R. STONE AND CO., the entity named herein and personally signed this document;

    (b) this person has the authority to sign this document; and

    (c) signed, sealed and delivered this document as his or her act and deed.

KATHLEEN A. REABOLD

NOTARY PUBLIC OF NEW JERSEY

Commission Expires 4/9/2009