FILED

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

2010 OCT 15  P 4: 0

In re:

CLERK
BANKRUPTCY COURT
NORTHERN DISTRICT FL.

ROBERT CHARLES WALLERIUS                    CASE NO. 10-40401-LMK

Debtor.

Chapter 11

_____/

**DEBTOR'S DISCLOSURE STATEMENT**
**(October 15, 2010)**

**ARTICLE I - INTRODUCTION**

Debtor, Robert C. Wallerius, provides this Disclosure Statement pursuant to section 1125 of the United States Bankruptcy Code, (the "Code") to provide material information to his creditors so that they may make a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Debtor's Plan of Reorganization (the "Plan"). The Plan, a copy of which is annexed hereto as Exhibit "A", is being filed with the Clerk of the United States Bankruptcy Court contemporaneously with this Disclosure Statement.

Except as indicated otherwise, the portions of this Disclosure Statement describing the Debtor, his pre and post petition activities, relevant events during the bankruptcy proceeding and the Plan have been prepared from information supplied by the Debtor. The Debtor is not aware of any material inaccuracies or omissions with respect to the matters described in this Disclosure Statement. The information contained herein, however, has not been subjected to an audit, and thus the Debtor is unable to warrant, represent or guarantee that the information contained in this Disclosure Statement is without any inaccuracies.

DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED DISCLOSURE STATEMENT AND A THIRD AMENDED PLAN.  CREDITORS ARE ADVISED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  THE PLAN AND DISCLOSURE STATEMENT ARE NOT REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR IN ACCORD WITH OTHER APPLICABLE NON-BANKRUPTCY LAW.  ALL PERSONS SHOULD EVALUATE THE PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.  AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

Except as described below, the Plan may be confirmed only if accepted by each voting Class. The Bankruptcy Code defines "acceptance" as acceptance by holders of (a) at least two thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims and (b) at least two thirds (2/3) in amount of Allowed interests in each Class whose holders cast ballots.  Any voting Class that fails to accept the plan will be deemed to have rejected the Plan.  Section 1129 (b) of the Bankruptcy

Code permits confirmation of the Plan notwithstanding rejection by one or more Classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting Class or Classes ("Cram down").
The Debtor may seek to have the Plan confirmed over the rejection of any voting Class which does not accept the Plan, or Class which is deemed to have rejected the Plan.

DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CREDITORS. THE DEBTOR RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

After carefully reviewing the Plan and Disclosure Statement, including Exhibits, each person holding a Claim should vote by completing the enclosed Ballot and returning the Ballot. If you have a claim in more than one such voting Class, you should obtain a separate Ballot for each Claim and vote on each Claim separately.

TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED AND RECEIVED AT THE ADDRESS INDICATED BELOW BY 4:00 P.M (E.S.T.) ON _____, 2010. ANY BALLOTS RECEIVED AND SIGNED THAT DO NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATE BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN, FACSIMILE BALLOTS WILL NOT BE ACCEPTED.

Please return your Ballot(s) to:          Robert C. Wallerius, Debtor
                                          3084 McCord Boulevard
                                          Tallahassee, FL 32303
                                          888.274.4046

If you have any questions about the procedure for voting, if you did not receive a Ballot, if you received a damaged Ballot or have lost your Ballot, please call Robert C. Wallerius (888) 274-4046 between 9:00 a.m. and 5:00 p.m. (E.S.T.), Monday through Friday.

## ARTICLE II - CAUSES OF CHAPTER 11 FILING

The financial difficulties that led to Robert Wallerius filing a Chapter 11 petition on April 27, 2010, were primarily caused by a disabling car accident in March 2005. Wallerius was rear ended at high speed by a New York City licensed taxi on the George Washington Bridge connecting New York and New Jersey. Wallerius was traveling from JFK Airport by rental car to his marital residence in New Jersey at the time. Wallerius suffered serious injuries in the collision, including spinal fractures, nerve damage, heart damage, lung damage from a broken neck and the loss of spinal fluid. The injuries, over time, became more and more debilitating, eventually totally crippling. In October 2007, Wallerius due to severe spinal nerve damage throughout his spine, began to fall periodically from losing use of his legs causing him to suddenly collapse unexpectedly and was completely uninsured due to jurisdictional arguments by defendants in a $2 million personal injury suit in NYC, NY by the Debtor filed in 2008 and next pre-trial activity to be heard at a court conference scheduled December 17, 2010. The debtor acting pro se, contacted the insurers involved in the NYC personal injury suit

over the past few weeks and his carrier NJ auto insurance carrier at the time of the accident, AIG, has confirmed Debtor is covered for loss of income in addition to $250,000 of underinsured coverage should the taxi company be unable to pay more than the $100,000 of coverage they had in place on the taxi/driver as of the date of the accident March 17, 2005. The case is temporarily stayed by this Chapter 11 proceeding but it has become a valuable fact finding period of time for Debtor acting Pro Se.

When Debtor was injured, he was engaged in starting a new business venture called PaycheckPC which provides financing for state employees to purchase computer equipment by means of payroll deduction financing. Wallerius is a trained accountant and has been involved in many successful ventures involving finance over more than 30 years. At the time of the accident, Wallerius was engaged in negotiations to obtain approval for payroll deduction privileges from the State of California. Because of the injuries, since the accident, Wallerius has not been able to travel as required for his employment. This caused him to delay the offering of PaycheckPC to California state employees until October 15, 2008, days after the dismissal of a prior Chapter 11 in the instant court. Debtor with daily physical therapy provided in CA from October 15-Decemebr 31, 2008 was able to successfully start the PaycheckPC program in CA. On return to Florida on December 31, 2008, within hours, the Debtor was rushed to Tallahassee memorial Hospital Coronary Intensive Care unit diagnosed with exhaustion, heart and lung problems diagnosed to be resulting from a broken neck (cervical vertebrae C-4 through C-7 affecting most upper body functions in addition to lower spinal injuries. Within days subsequent to the dismissal of Debtor's prior Chapter 11 07-40211-LMK, Debtor was determined totally disabled and was finally awarded monthly Social Security Disability Income beginning November 2008 and continuing until Debtor is completely restored to a physical condition allowing him to return to full-time work and income. More importantly, effective January 1, 2009, Debtor was provided Medicare coverage and since has undergone more than 15 corrective spinal surgeries, the final September 24, 2010 and is currently recovering from a fully successful 3.5 hour rebuilding of the cervical spine and fusion performed through an incision through the Debtors, neck whereby his throat and esophagus were moved to complete the successful surgery. Because the surgery was more complex than anticipated, the surgeon recommends the Debtor not travel or work at a desk until November 1, 2010. Despite the surgeon's orders, it was recommended by the US Trustee's Office this Disclosure Statement and Plan of Reorganization arrive on time October 15, 2010 or risk losing the protection afforded under Chapter 11 with the ultimate goal of approving the Plan and beginning disbursements to creditors. As a consequence of taking the period of time January 1, 2009-current, Debtor lost his interest in PaycheckPC, the company he created.

During July 2010, the owners of PaycheckPC entered into an agreement with the Debtor's newly formed company Purple Angel Marketing LLC whereby he could ease back into work managing PaycheckPC from his home in Tallahassee until able to return to full time employment sometime soon after full recovery from the recent successful surgery removing the crippling pain of years but creating temporary vocal and swallowing problems expected to improve over the next twelve months. Since July, the Debtor has created increasing monthly gross income through Purple Angel Marketing LLC managing the PaycheckPC program sufficient to have an adequate and growing cash reserve within Purple Angel Marketing LLC to successfully operate and grow the sales of the company and provide a household income more than sufficient to meet all monthly obligations current and past as presented by the Plan of Reorganization and further explained by this Disclosure statement..

## ARTICLE III - CHAPTER 11 ADMINISTRATION

From and after the April 27, 2010, Chapter 11 filing date, Debtor has operated as a Debtor in Possession continuing to manage his affairs.   No Creditors' Committee was formed in the proceeding and Debtors has discharged his duties as a Chapter 11 debtor on a consistent basis.   Debtor represented himself before this court ("pro se") and continues for the time being because he was denied leave to hire counsel by the instant court.   Debtor, because of his current rapidly healing health condition and recovery of a hopeful final spinal surgery of September 24, 2010 repairing/reconstructing his broken neck, at doctor's orders through October 31, 2010 not to perform any desk work, plane travel or be permitted the ability to drive an automobile, is only deficient 25 days in providing the US trustee his Monthly Operating Report for the month of August due on September 20, 2010 and also the amended schedules necessary to reconcile with this plan of reorganization and Disclosure Statement.   Debtor has constantly kept (and will continue to keep) the US Trustee informed with updates as the overall continued and on-time progress of implementing his Plan of Reorganization as outlined in the original petition and schedules filed with the court.

## ARTICLE IV - CLAIMS ANALYSIS

The following claim of EMI North America (erroneously classified as a Secured Creditor Claim) failed to file a claim with the Court by the September 3, 2010, claims bar date set by the Court and will not receive dividends under the Plan.

The following original filed petition listed unsecured creditors failed to file valid claims with the Court by the September 3, 2010, claims bar date set by the Court and will not receive dividends under the Plan:

1. City of Tallahassee $1,698.91
2. EZ Pass $8.85
3. RJM Acquisitions, LLC $405.36
4. Island Group, LLC $405.36
5. Sean R. Callagy, Esquire $209.46
6. United Collections Corporation $1000.76
7. Cablevision $58.37
8. Center for Orthopedic and Sports Medicine $89.43
9. Verizon IC System, Inc. $484.33
10. Anesthesia Associates of Tallahassee $105.67
11. Anesthesia Associates of Tallahassee $31.59
12. Renaissance imaging $22.08
13. Comcast $496.57
14. Michael R. Moran $952,701.28
15. Resource Management Groups, Inc $1,293,281.41
16. Bergen Medical center $537.00
17. Nutter, McLennan & Fish $7,447.34
18. Paul & Linda Warner $4,000.00
19. State of NJ-AICS $2,276.31
20. Texas Life $13,000.00
21. Pascack Hospital $781.00

22. Pascack Hospital $50.00
23. Raving, Greenberg PC $10,000.00
24. Blockbuster $40.63
25. King's Supermarket $112.72
26. NJ/NY Port Authority $54.85
27. Dermatology Associates of Tallahassee $45.00
28. NJ/NY Port Authority 5 Star $235.00
29. Valley Presbyterian Hospital $48.36
30. Tallahassee Outpatient Surgery $112.08
31. PODS of LA $462.09
32. Tallahassee Memorial Hospital $1,094.10
33. Barrister Court reporting $477.05
34. North Florida Sports Medicine $18.25
35. Radiology Associates of Tallahassee $101.56

After petition schedules are amended to adjust the value of Debtor's interest in NJ real estate trust to reflect originally scheduled allowed related claims as offsets to the asset and delete all originally petition scheduled debts by any necessary motions and amendments to the originally filed petition, Debtor's Total Unsecured Debts will total $1,911.05, Secured Debts will total $317,270.11, Priority Debts will total $4,319.32 and causing a grand total of debts amounting to $323,500.48.

GMAC holds a mortgage on Debtor's New Jersey residence co-owned with his 82 year old mother who resides there.   Debtor contends that GMAC is adequately protected and stayed, in his Plan of Reorganization through the recent Chapter 13 filing by his mother in US Bankruptcy Court District of New Jersey.   Debtor's mother intends to modify the mortgage by a NJ Judiciary Mediation program for seniors reducing the interest rate to a market rate; and, to capitalize the (adjusted for over-charges and un-allowed fees) arrearage of the mortgage loan and associated costs incurred due to Debtors' delinquency.   Payments and foreclosure action on this property are currently stayed by a) a Chapter 13 filing of Debtor's mother and co-owner/co-borrower of the subject property and b) a class action against GMAC by the State of New Jersey where the subject property is located.

Debtors has filed all required federal income tax returns and paid all related taxes.   The Trustee of Stafford Real Estate Trust, however, may have never filed federal and state tax returns from 2005 through 2010.

## ARTICLE V - FEASIBILITY

See Exhibit attached hereto; it is Debtor's Cash Flow Statement.


_____

Robert C. Wallerius
DEBTOR PRO SE

3084 McCord Boulevard
Tallahassee, FL 32303
(888) 274-4046
Fax: (850) 692-3740
Email: robertwallerius@prodigy.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of October, 2010, I filed this Application with the Clerk of the Court in person and, further, certify that, it will be furnished to ALL PARTIES INTEREST including Chad D. Heckman, Esq. and Jason Egan, Esq., Office of the United States Trustee, 110 East Park Avenue – Suite 128, Tallahassee FL 32301 [jason.h.egan@usdoj.gov].

Robert C. Wallerius
DEBTOR PRO SE