**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:                                              CASE NO. 10-40401-LMK

    ROBERT CHARLES WALLERIUS          CHAPTER 11

       Debtor.
_____/

**<u>MOTION TO DISMISS</u>**

      Creditors, M'Ware Corporation ("MW"), James Norton ("Norton") and the Resource

Management Groups ("RMG") Creditors in this case, file this Motion to Dismiss, requests that this

matter be set down for hearing on April 14, 2011, at 1:30 p.m., and states:

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      1.  This matter relates to the above-styled bankruptcy petition filed in the Bankruptcy Court

of the Northern District of Florida under Chapter 11 of the Bankruptcy Code.

      2.  Creditors are unsecured creditors and party in interest to this Chapter 11 case.

      3.  The Debtor has filed two previous Chapter 11 cases before this Court.  Case number 07-

40211 was filed on April 26, 2007 and dismissed on October 15, 2008, after the Debtor failed to

appear at the evidentiary hearing on Creditors' Motion to Dismiss (the "first case").

      4.  The Debtor's second case was assigned case number 10-40233-LMK and was filed on

March 15, 2010.  This second case was dismissed on April 1, 2010, due to the Debtor's failure to

comply with an Order of this Court and file certain papers and pleadings (the "second case").  In

neither case was the Order of dismissal made with prejudice against subsequent filings.

      5.  The instant Chapter 11 case was filed on April 27, 2010 ("the case").

1

6.  The case, as with the previous two cases is based in large part on promised and future, but not present income from a personal injury suit filed in New York State and income that will supposedly come from an entity known as the Stafford Real Estate Trust (hereinafter referred to as the "Trust" or "Trust Property").

7.  The Debtor has not filed a monthly operating report in this case since January 14, 2011, representing the period from December 1, 2010 to December 31, 2010.

8.  The last hearing in this matter was held on February 10, 2011, at which time the Court advised the Debtor that its Disclosure Statement and Plan were "wholly inadequate" and did not provide "adequate information" to Creditors, the Trustee and the Court.  The Court agreed to continue the matter for sixty days; until April 14, 2011 at 1:30 p.m. to give the Debtor the opportunity to procure counsel, Mr. Mark Freund, and amend the Plan and Disclosure Statement.

9.  As of the date of this Motion, the Debtor has not filed any additional pleadings in the case, counsel has not appeared and the Debtor, as state above, has not filed its monthly operating reports for the months of January or February.

10. When this case was initially filed, the Debtor had an interest in real property and sought to resist stay relief motions filed in relation thereto (*See* Docket Nos. 31, 33, 50, 51).

11.  The court entered Orders lifting the stay as to the only two real properties involved in this case (See Docket Nos. 59 and 65).  Accordingly, the only debts remaining in this case are unsecured.

12.  The Debtor scheduled $2,636,487.72 of unsecured debt.  Of this amount, Creditors are owed $1,944,264.98; 73.7% of that total.

13.  Creditors' claims are rooted in final judgments or amounts owed stemming from the

relationship between the Debtor and Creditors involving real property in New Jersey which held by the Trust.

14.     The Debtor is a 55% beneficiary of the Trust which was created in New Jersey on or about July 16, 2001 (*See Exhibit One*).  Upon its creation, the Trust had one asset, that being roughly 16 acres of real estate in Stafford Township, Ocean County, New Jersey.

15.     The Trust owns and holds a mortgage to secure payment of $1,439,000.00 plus interest from December 31, 2003, from the mortgagor, R. Stone and Co. and Robert E. Stone, Jr., a guarantor (collectively referred to as "Stone").

16.     As outlined above, the Trust was created in New Jersey on or about July 16, 2001, by Michael Moran ("Moran") and an "Agreement Concerning Real Property" was entered into that same day between the Debtor and Moran.  (*See Exhibit One*).  In the Agreement Concerning Real Property, the Debtor gave Moran the <u>exclusive</u> right to manage the property at his discretion (paragraph 12) and the Debtor acknowledged and assumed "sole responsibility for each and every financial obligation now existing, or which may be incurred in the future with regard" to the property at issue (paragraph 13).

17.     On May 29, 2002, the property at issue was deeded to the Trust *(See Exhibit Two*).

18.     On June 1, 2002, the Debtor granted authority to Moran to enable Moran to mortgage the Trust property in the amount of $600,000.00 (*See Exhibit Three*).

19.     On June 2, 2002, Moran, as Trustee, granted a mortgage and note in the original face amount of $600,000.00 to the Resource Management Groups, Inc. ("RMG") (*See Exhibit Four*).  The Debtor was aware of, and consented to this action taken by Moran in granting a mortgage to RMG.

20.     On March 17, 2003, Moran, as Trustee and James Norton ("Norton")
individually entered into an agreement concerning the potential sale of the Trust's asset–the real
property (*See Exhibit Five*).  This is the document the Debtor has alleged was "fabricated" and was
partly the basis for the Debtor's Complaint filed in New Jersey state court.  The Debtor gave Moran
the authority to enter into this agreement with Norton pursuant to paragraph 12 of *Exhibit One*
hereto.   In this agreement, the Trust agreed to pay over to Norton any funds in excess of
$1,200,000.00 if Norton were able to consummate a deal to sell the Trust property to a third party
buyer.  As outlined in paragraphs three and four of this agreement, the agreement was entered into
after Moran and the Debtor had spent the previous 20 years attempting to market the property and
sell it–to no avail.

21.     Some seven months later, Norton was able to successfully market the property
and on December 21, 2003, the property was deeded over to R. Stone and Co., a New Jersey
Corporation (*See Exhibit Six*).  At that same time, R. Stone and Company gave a mortgage to the
Trust to secure payment of the original sum of $1,439,000.00. (*See Exhibit Seven*).  Two extensions
of that mortgage have been entered into by the Trust and Stone (*See Exhibits Eight and Nine*).

22.     Subsequent to granting the Mortgage to RMG, the Trust defaulted under the
terms of the Note and Mortgage to RMG (the mortgage being attached as *Exhibit Four* hereto).  A
lawsuit was subsequently filed in Massachusetts by RMG and Norton as Plaintiffs against Moran
and The Stafford Real Estate Trust.  Moran, as Trustee, and by and through the powers vested in him
in that capacity as granted to him by the Debtor and the Trust instrument and other agreements
between the Debtor and Moran, consented to a judgment ("the judgment") in the Massachusetts
lawsuit.  (*See Exhibit Ten).*  The judgment was entered on September 23, 2005 in the sum of

**4**

$838,093.38 as to RMG (the total indebtedness under the Note and Mortgage owed to RMG at that time) and $240,000.00 as to Norton (the commission due Norton per *Exhibit Five* attached hereto); the total judgment being $1,078,093.38.

23.    The judgment was then subsequently domesticated in New Jersey.

24.    On or about June 25, 2006, a Writ of Execution was issued in New Jersey on the domesticated judgment.  On or about August 28, 2006, the Writ was served on the attorneys for Stone and Moran, as Trustee of the Trust; thereby attaching all income to the Trust on the mortgage due to the Trust from Stone to the extent of the value of the judgment.

25.    It is the actions of Moran relating to the Massachusetts judgment and mortgage to RMG (to which the Debtor gave his written consent) that gave rise to the Debtor's lawsuit in New Jersey against RMG, M'Ware Corp., Norton, Moran and Justine C. Moran which the Debtor has repeatedly alluded to in pleadings and oral argument before this Court.  A copy of the Second Amended Complaint ("the Complaint") under which the Debtor was proceeding in that case is attached hereto as *Exhibit Eleven*.

26.    As outlined to the Court previously by Creditors in previous motions filed in this case, the Debtor's allegations against RMG, M'Ware and Norton and prayers for relief against the same in the Complaint have been summarily denied with prejudice.  Those Orders (collectively attached hereto as *Exhibit Twelve*) were entered on September 7, 2007.  The Debtor did not appeal any of these Orders denying Summary Judgment with prejudice and dismissing the Debtor's claims.

27.    The docket of the New Jersey case is attached hereto as "Exhibit Thirteen".  As shown by the docket, the case was filed on June 7, 2004 and there has been no record activity in the case of any kind since **October 1, 2009** and no action by the Debtor to set aside the dismissal of his

action against Creditors.

28.     The New Jersey Rules of Court, Rule 2.4 entitled "Time For Appeal" reads, in relevant part:

**2:4-1. Time: From Judgments, Orders, Decisions, Actions and From Rules. (a) Appeals from final judgments of courts, final judgments or orders of judges sitting as statutory agents and final judgments of the Division of Workers' Compensation shall be taken within 45 days of their entry.**

29.     By Creditors' accounting, the Debtor's interest in the Trust Property is of no value and accordingly, no money will flow to the Debtor to fund this case.  According to Creditors' calculations, the value of the Debtor's interest in the mortgage receivable as of November 30, 2010, was as follows:

| | |
|---|---|
| Principal balance of mortgage receivable: | $1,610,000 |
| Related accrued interest: | $112,700 |
| Asset Value: | $1,722,700 |
| RMG Judgment Value: | $1,356,093 |
| M'Ware Judgment Value: | $275,682 (as of 11/11/2010) |
| Norton Judgment Value: | $387,866 (as of 11/11/2010) |
| Moran Advances for Trust expenses | $350,000 (approximate) |
| Total obligations | $2,369,641 |
| Asset value | $1,722,700 |
| **Net value of the asset** | **($646,941)** |

Based on the foregoing, Creditors believe that their will be no disbursements from the Trust to Moran, nor the Debtor.

30.  At the time this case was filed, MW had domesticated and was seeking execution on its judgment.   A copy of the judgment that MW domesticated and the docket from the Leon County Circuit Court are attached hereto as "Exhibit 14" and show that just prior to the petition date, the undersigned had served a second set of post-judgment discovery upon the Debtor.

6

### ARGUMENT AND MEMORANDUM OF LAW

31.    Whether "cause" exists to dismiss a case under Chapter 11 is subject to judicial discretion.  *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984).  *In re Woodbrooke Assoc.,* 19 F.3d 12, 317 (7th Cir. 1994) (citing *In re Park Avenue Partners Ltd. Partnership,* 95 B.R. 605, 609 (Bankr. E.D. Wis. 1988)).  Moreover, a Chapter 11 case can be dismissed under § 1112(b) at any time.  Creditors need not wait until a Debtor proposes a plan or until a Debtor's exclusive right to file a plan has expired.  *Id.*  Likewise, creditors need not incur the added time and expense of a confirmation hearing on a Plan they believe cannot be effectuated. *Id.*  The very purpose of § 1112(b) is to cut short the Plan and confirmation process, as in this case, where it is pointless.

32.    11 U.S.C. § 1112(b)(4) provides, in relevant part that:  For the purposes of this subsection, the term "cause" includes:

> (E)  failure to comply with an Order of this Court;
>
> (F)  unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

33.    At the previous hearing in this matter, the Court continued the hearing on the Debtor's Disclosure Statement for 60 days, instead of 30 days to ensure ample time for the Debtor to secure counsel and take all directed actions in the case.

34.    At the previous hearing in this matter, the Debtor was ordered to prepare and file an appropriate and Amended Disclosure Statement and Plan.  The Debtor has not done so.

35.    At the previous hearing, the Debtor represented that he was to engage counsel the following week.  No counsel has appeared.

36.    At the previous hearing, the Debtor was advised to file proper objections to Creditors'

7

claims.  The Debtor has not done so.

37.    The Debtor has not filed his monthly operating reports for the months of January and February, 2011, as of the filing of this Motion.

38.    What is more, this case is a purely a two party dispute not only because of the facts of the matter, but also by the Debtor's own admission.  When asked by the Court at the last hearing in this matter what this case was about, apart from the Debtor's disputes with Creditors, the Debtor replied "nothing".

39.    Where a debtor's reorganization is essentially a two party dispute which can be resolved outside the bankruptcy court, and the purpose of the filing is to frustrate a creditor's remedies, it has been held that the petition was not filed in good faith.  *See In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984); *In re Noco, Inc.,* 76 B.R. 839, 844 (Bankr. N.D. Fla. 1987); *In re Sar-Manco, Inc.,* 70 B.R. 132, 141-142 (Bankr. M.D. Fla. 1986) (when mortgage had been reduced to final judgment, and debtor had no ability to satisfy final judgment prior to 4-10 years, it was a two-party dispute, and the bankruptcy was dismissed); *In re Krilich,* 87 B.R. 178, 181 (Bankr.M.D.Fla.1988) (case dismissed for lack of "good faith" where controversy basically involved two parties, *i.e.,* debtor and secured creditor).

40.    Even if one generously assumes that this case was nothing more than a two party dispute at the outset, this is clearly the case now.  The Debtor has no secured creditors are involved in this matter any longer and very few unsecured Creditors apart from Creditors and Moran.  This case is totally focused only on Creditors, their claims, and the myriad is issues that have already been conclusively and finally litigated in state court in New Jersey.

41.    Moreover, it is compelling evidence that a bankruptcy petition is the result of a two-

party dispute, when a debtor faces no threats from any other creditors. *In re State Street Houses, Inc.,* 305 B.R. 726, 736 (Bankr. S. D. Fla. 2002). In such instances, the bankruptcy proceeding should be dismissed. *Id.* at 736-737. *See also In re Campus Housing Developers, Inc.,* 124 B.R. 867 (Bankr. N. D. Fla. 1991) (dismissed bankruptcy for bad faith filing when it was clear that the matter was a two party dispute that had already been litigated in state court). At present, the Debtor faces no such threat from any Creditor.

42.    While there is no single test for determining whether a debtor has filed a petition in bad faith (*In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. Fla. 1988)), courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions". *Id.* at 1394. *See also In re Gooding,* 234 B.R. 157 (Bankr. M.D. Fla. 1999) (dismissed for bad faith because it was a two party dispute, and was merely a litigation strategy).

43.    In this case, the disputes over Creditors' claims have already been conclusively litigated in state court and, at the time of this filing, MW was actively trying to collect on its domesticated judgment against the Debtor. It is this that caused the Debtor to file this, his third bankruptcy petition in as many years, in an effort to frustrate MW's remedies as a Creditor who followed the Debtor to Florida.

44.  Finally, the Debtor's characterization of income that will come to him from the Trust in this case has been misleading; particularly when one considers that the Debtor failed to appeal the Summary Judgments dismissing his claims with prejudice in the New Jersey litigation relating to the Trust coupled with the fact that the Debtor is and has been well aware of the obligations of the Trust that must be paid before any distributions will be made to he or Michael Moran.

**WHEREFORE**, Creditors respectfully request that this Court dismiss this case and bar the Debtor from filing a second petition in any bankruptcy court in the United States for a period of time the Court deems proper under the circumstances pursuant to 11 U.S.C. § 109(g).

Respectfully submitted,

***Thrasher and Heckman, P.A.***

/s/ Chad D. Heckman
Chad D. Heckman, Esq.
Florida Bar No. 0526029
908 North Gadsden Street
Tallahassee, FL 32303
Voice: (850) 224-8685
Email: chad@thrasherandheckman.com
Web: www.thrasherandheckman.com
***Attorneys for Creditors***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that copies of the foregoing were served by electronic means or first class U.S. Mail on the date indicated as the filing date of this pleading on the CM/ECF system to: Robert Charles Wallerius, 3084 McCord Blvd, Tallahassee, FL 32303, Debtor and Jason H. Egan, Esq., 110 E. Park Avenue, Ste. 128, Tallahassee, FL 32301, Attorney for the Office of the U.S. Trustee.

 /s/  Chad D. Heckman
Attorney

10