FILED

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

ROBERT CHARLES WALLERIUS

CASE NO. 10-40401-LMK

Debtor.

Chapter 11

_____/

# DEBTOR'S AMENDED DISCLOSURE STATEMENT
(April 13, 2011)

## ARTICLE I - INTRODUCTION

Debtor, Robert C. Wallerius, provides this Disclosure Statement pursuant to section 1125 of the United States Bankruptcy Code, (the "Code") to provide material information to his creditors so that they may make a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Debtor's Plan of Reorganization (the "Plan"). The Plan, has been filed with the Clerk of the United States Bankruptcy Court will require hopefully one last amendment after the appearance of experienced counsel to assist Debtor with the final administration And execution of the Plan of Reorganization.

Except as indicated otherwise, the portions of this Disclosure Statement describing the Debtor, his pre and post petition activities, relevant events during the bankruptcy proceeding and the Plan have been prepared from information supplied by the Debtor. The Debtor is not aware of any material inaccuracies or omissions with respect to the matters described in this Disclosure Statement. The information contained herein, however, has not been subjected to an audit, and thus the Debtor is unable to warrant, represent or guarantee that the information contained in this Disclosure Statement is without any inaccuracies.

DEBTOR IS AWAITING APPEARANCE OF EXPERIENCED COUNSEL TO EDIT AS NECESSARY THE DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION AND ACCORDINGLY, DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED DISCLOSURE STATEMENT AND AMEND THE PLAN OF REORGANIZATION HOPEFULLY ONE LAST TIME. BECAUSE THE DEBTOR HAS BEEN PRO SE, TRIAL AND ERROR CONTINUE TO PROVIDE KNOWLEDGE, IMPROVEMENTS AND STRONGER LIKELIHOOD AT PRESENTING A FEASIBLE DISCLOSURE STATEMENT AND PLAN SOON. CREDITORS ARE ADVISED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN AND DISCLOSURE STATEMENT ARE NOT REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR IN ACCORD WITH OTHER APPLICABLE NON-BANKRUPTCY LAW. ALL PERSONS SHOULD EVALUATE THE PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED. AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN

ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

Except as described below, the Plan may be confirmed only if accepted by each voting Class. The Bankruptcy Code defines "acceptance" as acceptance by holders of (a) at least two thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims and (b) at least two thirds (2/3) in amount of Allowed interests in each Class whose holders cast ballots. Any voting Class that fails to accept the plan will be deemed to have rejected the Plan. Section 1129 (b) of the Bankruptcy Code permits confirmation of the Plan notwithstanding rejection by one or more Classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting Class or Classes ("Cram down").
The Debtor may seek to have the Plan confirmed over the rejection of any voting Class which does not accept the Plan, or Class which is deemed to have rejected the Plan.

DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CREDITORS. THE DEBTOR RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

After carefully reviewing the Plan and Disclosure Statement, including Exhibits, each person holding a Claim should vote by completing the enclosed Ballot and returning the Ballot. If you have a claim in more than one such voting Class, you should obtain a separate Ballot for each Claim and vote on each Claim separately.

TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED AND RECEIVED AT THE ADDRESS INDICATED BELOW BY 4:00 P.M (E.S.T.) ON _____, 2010. ANY BALLOTS RECEIVED AND SIGNED THAT DO NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATE BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN, FACSIMILE BALLOTS WILL NOT BE ACCEPTED.

Please return your Ballot(s) to:        Robert C. Wallerius, Debtor
                                        3084 McCord Boulevard
                                        Tallahassee, FL 32303
                                        888.274.4046

If you have any questions about the procedure for voting, if you did not receive a Ballot, if you received a damaged Ballot or have lost your Ballot, please call Robert C. Wallerius (888) 274-4046 between 9:00 a.m. and 5:00 p.m. (E.S.T.), Monday through Friday.

## ARTICLE II - CAUSES OF CHAPTER 11 FILING

The financial difficulties that led to Robert Wallerius filing a Chapter 11 petition on April 27, 2010, were primarily caused by a disabling car accident in March 2005. Wallerius was rear ended at high speed by a New York City licensed taxi on the George Washington Bridge connecting New York and New Jersey. Wallerius was traveling from JFK Airport by rental car to his marital residence in New Jersey at the time. Wallerius suffered serious injuries in the collision, including spinal fractures, nerve damage, heart damage, lung damage from a broken neck and the loss of spinal fluid. The

injuries, over time, became more and more debilitating, eventually totally crippling. In October 2007, Wallerius due to severe spinal nerve damage throughout his spine, began to fall periodically from losing use of his legs causing him to suddenly collapse unexpectedly. During 2005-December 2008, DEBTOR was completely uninsured due to jurisdictional arguments by defendants in a $2 million personal injury suit in NY filed in 2008 by the DEBTOR. Debtor acting pro se, contacted the insurers involved in the NYC personal injury suit. Debtor contacted his NJ auto insurance carrier AIG at the time of the accident, AIG, who has confirmed Debtor is covered for loss of income in addition to $250,000 of underinsured coverage. The case is temporarily stayed by this Chapter 11 proceeding but it has become a valuable fact finding period of time for Debtor acting Pro Se. DEBTOR has application pending with the instant court for replacement counsel approval under a contingent fee agreement. Debtor with approval of this honorable court, prays to have replacement counsel approved and finally commence settlement or litigate the matter.

    At the time Debtor was injured on March 17, 2005, he was engaged in starting a new business venture called PaycheckPC which provides financing for state employees to purchase computer equipment by means of payroll deduction financing. Debtor is is a trained accountant and has been involved in many successful ventures involving finance over more than 30 years. At the time of the accident, Debtor was engaged in negotiations to obtain approval for payroll deduction privileges from the State of California. Because of the injuries, since the accident, Wallerius has not been able to travel as required for his employment. This caused him to delay the offering of PaycheckPC to California state employees until October 15, 2008, days after the dismissal of a prior Chapter 11 in the instant court. Debtor with daily physical therapy provided in CA from October 15-Decemebr 31, 2008 was able to successfully start the PaycheckPC program in CA.

    On return home to Florida on December 31, 2008, within hours, the Debtor was rushed to Tallahassee memorial Hospital Coronary Intensive Care unit diagnosed with exhaustion, heart and lung problems diagnosed to be resulting from a broken neck (cervical vertebrae C-4 through C-7 affecting most upper body functions in addition to lower spinal injuries. Within days subsequent to the dismissal of Debtor's prior Chapter 11 07-40211-LMK, Debtor was determined totally disabled and was finally awarded monthly Social Security Disability Income beginning November 2008 and continuing until Debtor is completely restored to a physical condition allowing him to return to full-time work and income.

    More importantly, effective January 1, 2009, Debtor was provided Medicare coverage and since has undergone more than 15 corrective spinal surgeries, the final September 24, 2010 and is currently recovering from a fully successful 3.5 hour rebuilding of the cervical spine and fusion performed through an incision through the Debtors, neck whereby his throat and esophagus were moved to complete the successful surgery. Because the surgery was more complex than anticipated, the surgeon recommends the Debtor not travel or work at a desk until November 1, 2010. Despite the surgeon's orders, it was recommended by the US Trustee's Office this Disclosure Statement and Plan of Reorganization arrive on time October 15, 2010 or risk losing the protection afforded under Chapter 11 with the ultimate goal of approving the Plan and beginning disbursements to creditors. As a consequence of taking the period of time January 1, 2009-current to be surgically corrected, Debtor lost his interest in PaycheckPC, the company he created.

    Never to say die, Debtor during July 2010, the owners of PaycheckPC entered into an agreement with the Debtor's newly formed company Purple Angel Marketing LLC whereby he could ease back into work managing PaycheckPC from his home in Tallahassee. Since July, the Debtor has created a stable monthly gross income through Purple Angel Marketing LLC and believes he will

achieve sufficient income from the same to fund his Plan of Reorganization. The DEBTOR will receive monthly royalty income and annual bonuses as a means to fund the Plan of Reorganization provided Debtor is physically able to manage the day-to-day affairs of PaycheckPC.

## ARTICLE III - CHAPTER 11 ADMINISTRATION

From and after the April 27, 2010, Chapter 11 filing date, Debtor has operated as a Debtor In Possession continuing to manage his affairs. No Creditors' Committee was formed in the proceeding and Debtors has discharged his duties as a Chapter 11 debtor on a consistent basis. Debtor represented himself before this court ("pro se") and continues for the time being  Debtor has constantly kept (and will continue to keep) the US Trustee informed with updates as the overall continued and on-time progress of implementing his trial and error Plan of Reorganization as outlined in the original petition and schedules filed with the court.

## ARTICLE IV - CLAIMS ANALYSIS

The following claim of EMI North America (erroneously classified as a Secured Creditor Claim) failed to file a claim with the Court by the September 3, 2010, claims bar date set by the Court and will not receive dividends under the Plan.

The following unsecured creditors failed to file valid claims with the Court by the claims bar date set by the Court. -

| Creditor | Amount of Claim |
|---|---|
| RJM Acquisitions LLC<br>575 Underhill Blvd- #224<br>Syosset, NY 11791 | $405.36 |
| Island National Group LLC<br>6851 Jericho Tpk #180<br>Hauppauge, NY 11786 | $405.36 |
| Sean R. Callagy, Esq<br>700 Kinderkamack Road #203<br>Oradell, NJ 07649 | $209.46 |
| United Collections Corp.<br>1026 C Street<br>Hayward, CA 94541 | $1,000.76 |
| Michael R. Moran | $952,701.28 |

4

| | |
|---|---|
| 1201 S 21st Avenue<br>Hollywood, FL 33020 | |
| Resource Management Groups, Inc<br>c/o 908 N Gadsden Street<br>Tallahassee, FL 32303 | $952,701.28 |
| Bergen Medical Center<br>PO Box 383<br>Temple, PA 19560-0383 | $537.00 |
| Texas Life<br>900 Washington Street<br>Waco, TX 76701-1200 | $13,000.00 |
| Pascack Hospital-Rubin & Raines<br>PO Box 372480<br>Denver, CO 80014 | $50.00 |
| Pascack Hospital-Rubin & Raines<br>PO Box 372480<br>Denver, CO 80014 | $781.00 |
| Ravin Greenberg PC<br>101 Eisenhower Parkway<br>Roseland, NJ 07068-1096 | $10,000.00 |
| Blockbuster-34170<br>530 Kinderkamack Road<br>River edge, NJ 07661-2140 | $40.63 |
| Kings Supermarket<br>PO Box 2148<br>Wayne, NJ 07424-2148 | $112.72 |
| NJ/NY Port Authority 5 Star<br>70 Brewster Street<br>Newark, NJ 07114 | $54.85 |
| Valley Presbyterian Hospital<br>Department 9589<br>Los Angeles, CA 90084 | $48.36 |
| Barrister Court Reporting<br>120 Broadway Suite 1111<br>NYC, NY 10271 | $477.05 |

The Stafford Real Estate Trust is both the largest asset and liability of the DEBTOR's bankruptcy estate. Because of the DEBTOR's crippling medical condition 2005-2010, he was unable to continue the ongoing litigation as Plaintiff in a NJ court proceeding seeking to void the two largest judgments of his bankruptcy estate ($240,000.00 and $838,093.38 plus interest). The two judgments with interest are now $1,356,094.00 and $387,866.00. Additionally, the now $275,682.00 judgment of M'Ware Corporation will be challenged because it is simply a $120,000.00 offset to eventual proceeds due the Debtor, per the Trust agreement. Michael Moran, Trustee of the Stafford Real Estate Trust abusively breached his fiduciary duties ongoing since the Trust was formed in 2001. Trustee Moran used the trust as personal vehicle to steal the 55% Trust interest of the Debtor.

Debtor has contacted application pending with this court to approve a reputable New Jersey firm who is confident they can have the MA court set aside the $1,356,094.00 judgment and possibly also set aside the $387,866.00. Both MA judgments were obtained using forged documents. Debtor filed with this court, a copy of the forensic handwriting findings of John Paul Osborn, a new jersey expert. Mr. Osborn found documents used to obtain the MA judgments contained signatures found to be non-genuine. Recently a material document was found that may have been intentionally omitted from a court filing causing an adverse affect on the Debtor's estate. Debtor pending application for approving NJ counsel is urgent to have $1,000,000.00 of Trust cash in bank recently received, frozen until the courts of New Jersey and Massachusetts rule. Additionally, DEBTOR is interviewing accountants to file many years of unfiled trust tax returns. There has never been a Trust accounting by an independent accountant and the Debtor seeks to have the NJ court order the same. The DEBTOR seeks to have the Trustee removed and have the court appoint a Trustee to wind-up the affairs of the Stafford Real Estate Trust  The DEBTOR has been offered a financial means outside the Plan to pay for some or all of any fees associated with the NJ and MA litigation based on a large new business opportunity Debtor brought to PaycheckPC.

After petition schedules are amended to adjust the value of Debtor's interest in NJ real estate trust to reflect originally scheduled allowed related claims as offsets to the asset and delete all originally petition scheduled debts by any necessary motions and amendments to the originally filed petition, Debtor's Total Unsecured Debts will total $1,911.05.

GMAC holds a mortgage on Debtor's New Jersey residence co-owned with his 82 year old mother who resides there. Debtor contends that GMAC is adequately protected and stayed in his Plan of Reorganization through the recent Chapter 13 filing by his mother in US Bankruptcy Court District of New Jersey. Debtor's mother intends to modify the mortgage by a NJ Judiciary Mediation program for seniors reducing the interest rate to a market rate; and, to capitalize the (adjusted for over-charges and un-allowed fees) arrearage of the mortgage loan and associated costs incurred due to Debtors' delinquency. Payments and foreclosure action on this property are currently stayed by a) a Chapter 13 filing of Debtor's mother and co-owner/co-borrower of the subject property and b) a class action against GMAC by the State of New jersey where the subject property is located.

Debtors has filed all required federal income tax returns and paid all related taxes. The Trustee of Stafford Real Estate Trust, however, may have never filed federal and state tax returns from 2005 through 2010.

## ARTICLE V - FEASIBILITY

See Exhibit attached hereto; it is Debtor's Cash Flow Statement.

## ARTICLE VI – LIQUIDATION ANALYSIS

The estate's assets as of April 13, 2011, including the estimated value thereof, are as follows:

| ASSETS | Estimated Value |
|---|---|
| Real Estate (50% interest) | $210,000.00 |
| Stafford Real Estate Trust | $2,000,000.00 |
| Checking Account | $1,000.00 |
| Cash on Hand | $1,029.00 |
| Personal Belongings | $2,100.00 |
| TOTAL ASSETS: | $2,214,129.00 |

Against the aforesaid estimated total assets of $2,217,627.00, the estate will have the following estimated liabilities with a priority payment over general Unsecured creditors:

| | |
|---|---|
| Unsecured Priority Administrative & Tax Claims: | $4,319.32 |
| Secured Creditor (GMAC Mortgage) | $161,635.06 |
| TOTAL LIABILITIES: | $165,954.38 |

Until claims associated with Debtors' New Jersey real estate trust are adjudicated by the courts of New jersey and Massachusetts, it is impossible for Debtor to predict the actual amount of funds that would be available for distribution to various Classes of Creditors with certainty, but Debtor acknowledges that his assets, even on liquidation, are likely to be sufficient to pay all Classes of creditors, but the amount due to this Class may be decreased by an unknown amount as a result of the claims-related motion recently filed. However, even if the amount of such Claims were to increase slightly over amounts scheduled, Debtor's assets would likely be sufficient to pay same in full given the eventual receipt of settlement or litigation of Debtor's personal injury suit proceeds or some or all of the $1.7 million mortgage receivable Stafford Real Estate Trust. In addition to proceeds of the personal injury suit, an insured claim for loss of earnings has recently been filed for $46,800 with 21st Century Insurance, claims paying agent of American International Insurance Company-AIG. Pending application of New Jersey Attorney Joshua Denbeaux includes service evaluating a potential breach of contract action against AIG for not providing personal injury protection coverage from March 17, 2005-current.

Robert C. Wallerius, Debtor - Case# 10-40401-LMK
Amended Projected Future Income Expenses 2011-2014

| | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
|---|---|---|---|---|---|---|---|---|
| 2011/2012 INCOME | $ 5,750.00 | $ 5,750.00 | $ 5,750.00 | $ 5,750.00 | $ 5,750.00 | $ 5,750.00 | $ 6,750.00 | $ 6,750.00 |
| EXPENSES: | | | | | | | | |
| Living Costs | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 |
| Secured Debts | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 |
| Total | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 |
| Cash Flow | $ 1,950.00 | $ 1,950.00 | $ 1,950.00 | $ 1,950.00 | $ 1,950.00 | $ 1,950.00 | $ 2,950.00 | $ 2,950.00 |
| 2012/2013 INCOME: | $ 6,750.00 | $ 6,750.00 | $ 6,750.00 | $ 6,750.00 | $ 6,750.00 | $ 6,750.00 | $ 7,750.00 | $ 7,750.00 |
| EXPENSES: | | | | | | | | |
| Living Costs | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 |
| Secured Debts | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 |
| Total | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 |
| Cash Flow | $ 2,950.00 | $ 2,950.00 | $ 2,950.00 | $ 2,950.00 | $ 2,950.00 | $ 2,950.00 | $ 3,950.00 | $ 3,950.00 |
| 2013/2014 INCOME: | $ 7,750.00 | $ 7,750.00 | $ 7,750.00 | $ 7,750.00 | $ 7,750.00 | $ 7,750.00 | $ 8,750.00 | $ 8,750.00 |
| EXPENSES: | | | | | | | | |
| Living Costs | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 | $ 1,600.00 |
| Secured Debts | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 |
| Total | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 |
| Cash Flow | $ 3,950.00 | $ 3,950.00 | $ 3,950.00 | $ 3,950.00 | $ 3,950.00 | $ 3,950.00 | $ 4,950.00 | $ 4,950.00 |

Robert C. Wallerius, Debtor - Case# 10-40401-LMK
Amended Projected Future Income Expenses 2011-2014

| | Jan-12 | | Feb-12 | | Mar-12 | | Apr-12 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| $ | 6,750.00 | $ | 6,750.00 | $ | 6,750.00 | $ | 6,750.00 | $ | 75,000.00 |
| $ | 1,600.00 | $ | 1,600.00 | $ | 1,600.00 | $ | 1,600.00 | $ | 19,200.00 |
| $ | 2,200.00 | $ | 2,200.00 | $ | 2,200.00 | $ | 2,200.00 | $ | 26,400.00 |
| $ | 3,800.00 | $ | 3,800.00 | $ | 3,800.00 | $ | 3,800.00 | $ | 45,600.00 |
| $ | 2,950.00 | $ | 2,950.00 | $ | 2,950.00 | $ | 2,950.00 | $ | 29,400.00 |
| $ | 7,750.00 | $ | 7,750.00 | $ | 7,750.00 | $ | 7,750.00 | $ | 87,000.00 |
| $ | 1,600.00 | $ | 1,600.00 | $ | 1,600.00 | $ | 1,600.00 | $ | 19,200.00 |
| $ | 2,200.00 | $ | 2,200.00 | $ | 2,200.00 | $ | 2,200.00 | $ | 26,400.00 |
| $ | 3,800.00 | $ | 3,800.00 | $ | 3,800.00 | $ | 3,800.00 | $ | 45,600.00 |
| $ | 3,950.00 | $ | 3,950.00 | $ | 3,950.00 | $ | 3,950.00 | $ | 41,400.00 |
| $ | 8,750.00 | $ | 8,750.00 | $ | 8,750.00 | $ | 8,750.00 | $ | 99,000.00 |
| $ | 1,600.00 | $ | 1,600.00 | $ | 1,600.00 | $ | 1,600.00 | $ | 19,200.00 |
| $ | 2,200.00 | $ | 2,200.00 | $ | 2,200.00 | $ | 2,200.00 | $ | 26,400.00 |
| $ | 3,800.00 | $ | 3,800.00 | $ | 3,800.00 | $ | 3,800.00 | $ | 45,600.00 |
| $ | 4,950.00 | $ | 4,950.00 | $ | 4,950.00 | $ | 4,950.00 | $ | 53,400.00 |

## ARTICLE VII – FUTURE EARNINGS

### *(PLEASE SEE "PROJECTED INCOME EXPENSES 2011-2013" ATTACHED)*

*(signature)*
Robert C. Wallerius
DEBTOR PRO SE
3084 McCord Boulevard
Tallahassee, FL 32303
(888) 274-4046
Fax: (850) 692-3740
Email: robertwallerius@prodigy.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of April, 2011, I filed this Amended Debtor's Disclosure Statement with the Clerk of the Court in person and, further, certify that, it will be furnished to ALL PARTIES INTEREST including Chad D. Heckman, Esq. and Jason Egan, Esq., Office of the United States Trustee, 110 East Park Avenue – Suite 128, Tallahassee FL 32301 .

*(signature)*
Robert C. Wallerius
DEBTOR PRO SE
3084 McCord Boulevard
Tallahassee, FL 32303
(888) 274-4046
Fax: (850) 692-3740
Email: robertwallerius@prodigy.net